[Civ. No. 9140.    Fourth Dist., Div. One.    Apr. 10, 1969.]

PYLON, INC., Cross-complainant and Appellant, v. OLYMPIC INSURANCE COMPANY, Cross-defendant and Respondent.

644

Joseph W. Jarrett, Frank W. Woodhead and Loyd W. Reed for Cross-complainant and Appellant.

Jones & Daniels and Robert E. Jones for Cross-defendant and Respondent.

WHELAN, J. — Cross-complainant and cross-defendant Pylon, Inc. (Pylon), a corporation, has appealed from a judgment entered before trial of the main action dismissing its cross-complaint against Olympic Insurance Company (Olympic).

## The Facts as Alleged in the Pleadings

The following matters are alleged either in the original complaint, the cross-complaint of Toups Engineering, Inc. (Toups), a corporation, or in the cross-complaint of Pylon. Nothing by way of evidence produced by affidavit, deposition, request for admissions, or interrogatories was before the trial court so far as the record on appeal discloses.

Pylon was general contractor for the construction of a sewage pump station for Rossmoor Sanitation, Inc. (Rossmoor), a corporation, on property owned by Leisure World and Rossmoor. Toups, on September 30, 1964, made a contract with Rossmoor to prepare plans and specifications for construction of the station, including sewer lines, and to supervise the construction on behalf of Rossmoor.

Olympic issued a policy of insurance in favor of Toups against liability for damages for bodily injuries or death caused by accident and suffered by any person arising out of the business operation of Toups.

Pylon's written contract with Roosmoor was made July 23, 1965. It provided in part that neither Rossmoor nor Toups "should be answerable or accountable in any manner for any loss or damage that might happen to the work or any part thereof, or for any material or equipment used in performing the work, or for injury or damage to any person or persons, either workmen or the public, or for damage to adjoining property from any cause whatsoever during the progress of the work, or any time before final acceptance of the work" and that Pylon should indemnify and save Rossmoor and Toups "harmless against all claims for damages to persons or property arising out of [Pylon's] execution of the work covered by the contract and any and all cost, expenses, attorney fees and liability incurred by Rossmoor" and Toups "in defending against such claims, whether the same proceed to judgment or not and that [Pylon] would, at its own expense defend any such suit or action brought against Rossmoor" or Toups. The contract price was some $88,000, which has been paid.

George E. Widman (Widman) and Henry J. Cagigas

(Cagigas), on October 29, 1965, were employees of Pylon in the course of construction of the station and were working in a trench that caved in; the cave-in caused the death of Cagigas and injury to Widman.

Widman and the heirs of Cagigas joined in the present action to recover damages for injuries so caused to Widman and for the wrongful death of Cagigas, alleging negligence on the part of Rossmoor, Toups and others. Pylon was not a defendant.

The complaint alleged the status of Cagigas and Widman as employees of Pylon as general contractor in the carrying out of the contract and that the two workmen were employed in the trench which the defendants negligently operated and controlled. It alleged that the defendants, in their maintenance of the trench, failed to conform to three different applicable construction safety orders contained in title 8 of California Administrative Code and had failed to conform to section 6400, Labor Code, which requires an employer to furnish a safe place of employment.

Toups, by cross-complaint, made Pylon a party to the action and alleged the making by Pylon of the indemnity agreement referred to herein, the applicability of the indemnity agreement to the action brought by Widman and the Cagigas heirs, the making of demand upon Pylon that it assume defense of the action on behalf of Toups, and Pylon's refusal to do so; that Toups had filed an answer denying liability to the plaintiffs; that should Toups be held liable to plaintiffs, the liability would be based only upon negligence passive in nature; and that the indemnity provisions should apply to any judgment that plaintiffs might recover against Toups.

Pylon answered the cross-complaint denying the execution of an indemnity agreement; alleging that there was no valid indemnity agreement complying with section 3864, Labor Code; that there was no consideration for the alleged agreement to indemnify Toups; that Toups was actively negligent in participating in and supervising the activities of Pylon that allegedly caused the injuries to the workmen; and that the purported indemnity agreement should not be construed so as to indemnify Toups against its own active negligence.

Pylon filed a cross-complaint against Olympic, alleging that it "insured the liability of TOUPS ENGINEERING, INC., a corporation, for damages for bodily injury or death caused by accident and suffered by any person and arising out of the business operations of said insured"; alleged the existence of

a controversy and asked for a declaration that if Pylon should be held liable to Toups, it would be only for its equitable pro rata share as a co-indemnitor with Olympic.

Thereupon Olympic noticed a motion for a judgment dismissing Pylon's cross-complaint under section 437c, Code of Civil Procedure, and asking that such judgment declare that should Pylon be held liable to indemnify Toups, Olympic should not be required to contribute.

That motion was granted and Pylon appeals from the judgment which ordered its cross-complaint stricken rather than declaring that Olympic had no obligation to Pylon.

## DISCUSSION

Analysis of Pylon's argument suggests that the theories upon one of which, or upon a combination of which it is based are these:

1. Pylon and Olympic are co-insurers of the same risk, so that each should pay a pro rata share of the loss.

2. Pylon and Toups are joint tortfeasors and if Pylon should pay the total amount of a judgment recovered against Toups, it would be entitled to contribution from Toups and would be subrogated to Toups' right to recover the amount of that contribution from Toups' insurance carrier.

3. As representing an undisclosed insurance carrier of its own, Pylon should be entitled to contribution from the insurance carrier of the joint tortfeasor, Toups.

## FIRST THEORY

It cannot be said that Pylon and Olympic are co-insurers of the same risk.

Pylon's contract of indemnity has no monetary limit, covers only claims arising out of its execution of the work covered by the contract, is given to Rossmoor as well as to Toups, is part of a contract with Rossmoor, had its inception when that contract came into being, and was not given in consideration of a premium measured by the extent of the exposure.

Olympic's policy with Toups as beneficiary is described as one of liability insurance covering the business operations of the insured; nothing indicates that Toups' operations were limited to a single job; nothing indicates that limits of liability usual in insurance policies were not a part of the policy.

The rule as to contribution among co-insurers is generally stated thus:

"[W]here two or more insurance companies fully insure

the same risk and one company pays the total loss, that company may force contribution from the others." (*Fidelity etc. Co.* v. *Fireman's Fund Indem. Co.,* 38 Cal.App.2d 1, 4 [100 P.2d 364].)

█ In another situation, if several insurers have written policies limited as to the amount of coverage, insuring against liability for the same risk and without escape clauses or excess insurance clauses, the loss will be prorated among them in the proportions that their respective policy limits bear to the total amount of insurance under all the policies.

There is, however, no right of contribution for the benefit of an insurer that pays more than its proportion of a loss insured against under several policies, each of which contains a clause calling for proration (*Fidelity etc. Co.* v. *Fireman's Fund Indem. Co., supra,* 38 Cal.App.2d 1).

█ Where each of several policies contains a clause making the insurance excess to other valid insurance, and such clause comes into play because of the insufficiency of primary insurance coverage, the amount of the excess liability likewise will be prorated (*Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455]).

█ There is no basis for proration of the amount of a loss between an indemnitor whose contract contains no limit of liability—that is, one that undertakes to indemnify for the full amount of the liability—and an indemnitor whose obligation is limited as to amount, in the absence of any express contractual provision for a sharing of the liability.

### Cost of Defense

█ An insurer who, by reason of an excess clause, is not obligated to prorate the entire loss with an insurer having the primary obligation, may yet have an obligation to share in the cost of defense (*Government Emp. Ins. Co.* v. *St. Paul Fire etc. Ins. Co.,* 243 Cal.App.2d 186, 192 [52 Cal.Rptr. 317]); as may an insurer against which a proration of the amount of the loss is not enforcible (*Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27).

Here, too, there must be some quantitative relationship between the coverage limits of the various policies. Where one policy is without limit and another has a fixed limit, no basis for proration exists.

█ Moreover, the cross-complaint of Pylon does not allege any specific agreement of Olympic to pay the cost of defense.

650

## SECOND THEORY

■ The theory that should a judgment be rendered against Toups and should Pylon satisfy the judgment in full Pylon would be entitled to contribution from Toups as a joint tortfeasor cannot be sustained.

The right to contribution as between joint tortfeasors did not exist in California prior to the enactment of section 875, Code of Civil Procedure, in 1957.

No judgment based upon tort could be recovered against Pylon for injuries to its employees. Section 875, therefore, would not apply.

■ Pylon argues that it should have the right to indemnification from Toups as a tortfeasor under the rule that a right thereto exists in favor of a party innocent of wrong from a party whose active negligence caused the loss.

This curious argument has its sole origin in the fact that the complaint alleges the injuries were caused by Toups' negligence without mentioning Pylon as having been guilty of negligence of any sort. Nevertheless, the complaint is replete with allegations that, if true, show Pylon to have failed to furnish a safe place of employment for its injured employees whose injuries resulted from such neglect of the employer.

Therefore, even if it were possible to offset against the express contract for indemnity in favor of Toups an assumed implied right of indemnity in favor of the less culpable of joint tortfeasors, which we do not agree may be done, the pleadings and the allegations of the complaint showing negligence on the part of Pylon are not consistent with a right to such implied indemnity.

■ Even where a contract contains specific reciprocal indemnity provisions covering certain contingencies, the agreements to indemnify do not cancel out, but their effect is determined by the relationship of each of the parties to the cause of the loss for which indemnity is sought. (*Pacific Tel. & Tel. Co.* v. *Pacific Gas & Elec. Co.*, 170 Cal.App.2d 387 [338 P.2d 984].)

## THIRD THEORY

If we were to assume that Pylon is able to pass on to an insurance carrier of its own the burden of fulfilling the obligation to indemnify Toups, that insurance carrier would not be in any better position than Pylon to enforce contribution from Olympic or to claim that the obligation to indemnify Toups has been cancelled out by an implied obligation of Toups to indemnify Pylon.

For the reasons set forth earlier herein, such putative carrier for Pylon may not recover where Pylon may not recover.

APPLICABILITY OF PATENT SCAFFOLDING CO. v. WILLIAM SIMPSON, ETC.

Pylon cites the case of *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal.App.2d 506 [64 Cal.Rptr. 187], in support of its position. In doing so it argues that Olympic is a party before the court seeking affirmative relief as subrogee of Toups in seeking indemnity from Pylon. The *Patent Scaffolding* case was one in which fire insurers having paid the insured, sought by action brought in the name of the insured to recover damages for breach of a contract of the defendant Simpson by which it had obligated itself to furnish fire insurance to the insured that would have covered the loss; Simpson was in no way responsible for the fire that caused the loss.

Here, it has not been established that Toups had any responsibility to the injured workmen; no money has been paid to satisfy Toups' liability in that regard. So far as appears, Olympic at this point, like Pylon, has not fulfilled any obligations in favor of Toups.

If the *Patent Scaffolding* case has any applicability in the present situation, it would be in the dictum that the person entitled to indemnity may choose which of his contractual obligors he will look to for indemnity. We have discussed elsewhere the reasons why Pylon has no standing to compel Olympic to share in the obligation to Toups that Pylon undertook without reference, so far as appears, to any other source of indemnity that Toups may have had. It was, of course, within the power of Pylon not to enter into such an engagement without the use of language limiting its liability in the event there were other sources of indemnity for Toups.

The holding in the *Patent Scaffolding* case does not constitute a rule applicable to every situation in which an insurer of an indemnitee seeks to hold the contractor-indemnitor on an indemnity contract.

In *Harvey Machine Co. v. Hatzel & Buehler, Inc.*, 54 Cal.2d 445, 447 [6 Cal.Rptr. 284, 353 P.2d 924], one of the plaintiffs was the owner of land upon which defendants had contracted to carry out certain construction work; the other plaintiff was the landowner's liability insurance carrier.

By the construction contract defendants agreed:

" ' . . . to indemnify and hold harmless Harvey Machine

Co., Inc., and its officers and employees, against liability, including all costs and expenses, for bodily or personal injuries including death at any time resulting therefrom, sustained by any person or persons including employees of . . . [defendants], and arising from the use of the premises, facilities or services of Harvey Machine Co., Inc., its officers or employees.' ''

One of defendants' employees fell into an open elevator pit on the premises and sued Harvey. In a declaratory relief action, the judgment, affirmed on appeal, was that defendants were obligated to indemnify the plaintiffs.

The *Harvey Machine Co.* case clearly holds that the insurance carrier of an indemnitee is subrogated to the right of the latter to obtain indemnification for loss paid by the carrier from an indemnitor whose active negligence, operating concurrently with the negligence of the indemnitee, caused the loss.

The case of *Pacific Indem. Co.* v. *California etc. Ltd.*, 29 Cal.App.2d 260 [84 P.2d 313], was decided before the decision of *Witt* v. *Jackson*, 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641]. Because of that fact, an indemnitee and the indemnitee's insurance carrier were denied relief on two grounds, viz.: the indemnity agreement did not indemnify against negligence of the indemnitee's employees; the employer of the injured workman who was the indemnitor could not be denied its lien rights under the Labor Code because of its imputed negligence. There is no suggestion in the case that the indemnitee's insurance carrier could not enforce the indemnity agreement had the indemnitee been able to do so.

### INDEMNITEE'S NEGLIGENCE AS ACTIVE OR PASSIVE

In *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.*, 202 Cal.App.2d 99 [20 Cal.Rptr. 820], no insurance carrier was a party; it was an action in which the indemnitee directly sought to enforce against the contractor an indemnity agreement made a part of its written construction contract. Judgment for the indemnitee was affirmed.

The case is of relevant interest. Injured employees of the indemnitor sued the indemnitee and obtained a compromise settlement after the indemnitor had withdrawn from the defense of the action against the indemnitee. The work under the contract was to ''be performed under the direction of an authorized representative of owner.'' Concerning the effect of that provision on the question of the owner's active negli-

gence, the court said, at page 109: "As a general rule, one who employs an independent contractor to perform certain work can reserve the general supervisory right to control the work so as to insure its satisfactory completion according to the terms of the contract. (*McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785, 788 [285 P.2d 902] ; *Green* v. *Soule* (1904) 145 Cal. 96, 99-100 [78 P. 337].) As stated in the *McDonald* case, *supra*: '[T]he owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract— including the right to inspect (*Callan* v. *Bull,* 113 Cal. 593, 598-599 [45 P. 1017]), the right to stop the work (*Fay* v. *German General Ben. Soc.,* 163 Cal. 118, 122 [124 P. 844]), the right to make suggestions or recommendations as to details of the work (*S. A. Gerrard Co.* v. *Industrial Acc. Com., supra,* 17 Cal.2d 411, 414 [110 P.2d 377]), the right to prescribe alterations or deviations in the work (*Green* v. *Soule, supra,* 145 Cal. 96, 99-100)—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship.' "

The fact that Toups had certain supervisory obligations and rights over the construction, standing by itself, does not give rise to an inescapable inference that the injuries to Pylon's employees resulted from active negligence of Toups.

Olympic argues that Pylon's agreement to indemnify Toups is not against the active concurring negligence of Toups but only against liability arising out of passive negligence in relation to the performance by Pylon of its contract with Rossmoor. Such also is the purport of the allegations of the cross-complaint filed by Toups.

The extent of the risk covered by a contract of indemnity is a question of fact to be determined from the language of the contract and other competent evidence relevant to the interpretation of the language. (*Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641].)

The question whether the indemnity extends to consequences of the indemnitee's negligence comes within that rule. (*Harvey Machine Co.* v. *Hatzel & Buehler, Inc., supra,* 54 Cal.2d 445 ; *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co., supra,* 202 Cal.App.2d 99 ; *Indenco, Inc.* v. *Evans,* 201 Cal.App.2d 369 [20 Cal.Rptr. 90].)

That is so even though the negligence of the indemnitee may have been the sole cause of the injury if the language of

the agreement is sufficiently broad and the negligence is neither willful nor a violation of positive law. (*Werner* v. *Knoll*, 89 Cal.App.2d 474 [201 P.2d 45].)

Olympic is in error in its assertion that one might not obtain indemnification under an express contract of indemnity from a joint tortfeasor if the indemnitee's active negligence contributed to the injury against which indemnity is sought. Olympic's assertion is correct if limited to situations where a right to indemnity, if any, is solely of the implied character, or if the right to indemnity is embodied in a written contract in which it does not appear from clear and explicit language that it covers acts of active negligence of the indemnitee. If such coverage does appear from clear and explicit language to that effect, construed most strongly against the indemnitee, then the latter may recover indemnification against his own active negligence. (*John E. Branagh & Sons* v. *Witcosky*, 242 Cal.App.2d 835 [51 Cal.Rptr. 844]; *Whitmire* v. *H. K. Ferguson Co.*, 261 Cal.App.2d 594 [68 Cal.Rptr. 78]; *Goldman* v. *Ecco-Phoenix Elec. Corp.*, 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377]; *King* v. *Timber Structures, Inc.*, 240 Cal.App.2d 178 [49 Cal.Rptr. 414].)[1]

The language used in the cross-complaint of Toups alleges the contract of indemnity is not such as would protect Toups against the consequences of its own active negligence. Since Olympic asserts that the indemnity agreement does not cover against such negligence, we adopt its declared position in that regard as the law of the case.

### The Judgment Appealed from Is Not One Rendered Under Section 437c, Code of Civil Procedure

The summary judgment provided for by section 437c is made in response to a motion supported by affidavit in which the facts establish a cause of action in a plaintiff or a defense in favor of a defendant. (*Family Service Agency of Santa Barbara* v. *Ames*, 166 Cal.App.2d 344 [333 P.2d 142].) No such affidavit was presented either in support of the motion or in opposition. The only matters before the court were the complaint, the cross-complaint of Toups, the answers to those pleadings, the cross-complaint of Pylon and the motion to dismiss the latter.

The significant matters of fact would be as to the full text

---

[1]Section 2782, Civil Code, enacted in 1967, declares invalid any contract, other than by a licensed insurer, to indemnify one against loss *solely* caused by his own negligence. It was not retroactive.

of the agreement of indemnity contained in the contract between Rossmoor and Pylon, the full policy of insurance issued by Olympic in favor of Toups, the nature of the supervisory services to be performed by Toups as set forth in the language of its agreement with Rossmoor, the relationships of the various defendants among themselves and to Pylon, and the physical circumstances surrounding the cave-in that caused the injuries to Pylon's employees, including the facts of causation.

The court could only assume to be facts the matters set forth in the cross-complaint of Pylon in passing on the motion. Those facts on their face would not have entitled Pylon to the relief it asked; yet the actual language of the indemnity contract and the insurance contract might conceivably be such as to permit of contribution between Olympic and Pylon, unlikely as that may be.

A motion to dismiss, supported by an affidavit, the so-called speaking motion, is now to be treated as a motion under section 437c *(Pianka* v. *State of California,* 46 Cal.2d 208 [293 P.2d 458]; *Vallejo* v. *Montebello Sewer Co., Inc.,* 209 Cal. App.2d 721, 730 [26 Cal.Rptr. 447]).

On the other hand, a motion styled as being made under section 437c does not become so unless supported by affidavit; without such support it is no more than a motion for judgment on the pleadings.

Distinction has been made between the type of motion for judgment on the pleadings that attacks the sufficiency of a pleading to state a cause of action or a defense, and a type that in an action for declaratory relief asks for a judgment declaring the rights of the parties upon the basis of the factual allegations of the complaint seeking declaratory relief but adverse to the claims of the party seeking such relief. A case of the latter type is *Wilson* v. *Board of Retirement,* 156 Cal.App.2d 195, 203 [319 P.2d 426].

The motion in the present case asked for the latter type of order. However, the order granting the motion and the judgment made pursuant to the order, comprising one document, provided only that the cross-complaint be dismissed and did not make a declaration as to the respective rights of the parties.

Where a motion of the first type is granted, the ruling is in effect the sustaining of a demurrer to the pleading under attack. If it appear reasonable that the pleading might be amended so as to state a cause of action or defense, leave to

amend should be granted if requested (*MacIsaac* v. *Pozzo*, 26 Cal.2d 809 [161 P.2d 449]; *Beverage* v. *Canton Placer Min. Co.*, 43 Cal.2d 769, 772 [278 P.2d 694]). Even where the author of the defective pleading fails to request leave because of his absence when the ruling is made, the court should not order that the motion be granted without leave to amend, and its refusal to grant leave to amend in such case may be urged as error on appeal. (*Dobbins* v. *Hardister*, 242 Cal.App.2d 787, 797 [51 Cal.Rptr. 866]; Code Civ. Proc., § 472c.)

It is also a general rule that a party complaining of the trial court's refusal of a request for leave to amend must have tendered in the trial court a proposed amended pleading or have stated in substance the form the amendment would take. (*MacIsaac* v. *Pozzo, supra,* 26 Cal.2d 809; *Neher* v. *Kauffman,* 197 Cal. 674 [242 P. 713].)

According to the minutes of October 25, 1967, counsel for Pylon was present when what is described in the minutes as a motion for an order dismissing cross-complaint of Pylon was granted. The minutes do not reflect any request for leave to amend was made, nor do they or the written order deny leave to amend.

On the other hand, while Pylon's opening brief asserts Pylon should have been given leave to amend its cross-complaint, Pylon has not made any suggestion as to what it would or could allege to state a cause of action.

In fact, Pylon's briefs on appeal are concerned almost exclusively in seeking to uphold the contention that on the matters stated in the cross-complaint Pylon would be entitled to contribution from Olympic should Pylon be required to indemnify Toups. It has failed to sustain that burden.

Pylon's failure in the trial court to ask for leave to amend may perhaps be explained by the fact that the written notice of Olympic's motion would lead one to believe that what Olympic sought was a declaration of the rights and duties of the parties denying Pylon's claim to contribution, or a judgment dismissing the cross-complaint under section 437c, Code of Civil Procedure. What in fact was done was to strike the cross-complaint by a written order signed the day after the ruling on the motion and filed on the second day after the hearing. The written order, as we have noted, made no mention of a right to amend.

We should say, therefore, that Pylon should be given the right to amend if in its brief on appeal, when the matter was first mentioned, there were any suggestion of the respects in which it would amend.

But at the same time Pylon asserts it should have been given leave to amend, it also asserts that Olympic's motion recognized that the cross-complaint was sufficient as a basis for a declaratory judgment even if such judgment denied Pylon's claim of a right to contribution. In support of that contention, Pylon cites those cases whose general tenor is that a complaint seeking declaratory relief, if it show the existence of a controversy within section 1060, Code of Civil Procedure, is not properly the subject of a general demurrer merely because it also shows on its face that the judgment sought must decide the controversy adversely to the plaintiff. (*Maguire* v. *Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]; *Salsbery* v. *Ritter*, 48 Cal.2d 1, 7 [306 P.2d 897]; *General Ins. Co.* v. *Whitmore*, 235 Cal.App.2d 670, 673 [45 Cal.Rptr. 556].)

In that contention, Pylon is correct. There is, however, a line of cases that have held affirmance proper, where a reversal should result inevitably as a matter of law in a judgment adverse to the appellant. (*Western Homes* v. *Herbert Ketell, Inc.*, 236 Cal.App.2d 142, 146 [45 Cal.Rptr. 856]; *Johnson* v. *Oliver*, 266 Cal.App.2d 178, 182 [72 Cal.Rptr. 137]; *Sinclair* v. *State of California*, 194 Cal.App.2d 397, 408 [15 Cal.Rptr. 493].) The question is whether we should affirm the judgment since a declaration of the rights of the parties as a matter of law from the undenied allegations of the cross-complaint must be adverse to Pylon, and since this opinion may be considered as such a declaration, or whether we should reverse and remand for further proceedings.

There is nothing in favor of reversing and remanding unless Olympic's policy is so worded that Olympic has allowed itself to agree to contribute with a negligent indemnitor of Olympic's assured that would have to bear the entire loss unless Toups were actively negligent, in which case the indemnity agreement would not cover. That possibility is so unlikely that we discount it entirely.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.