[No. B082759. Second Dist., Div. Six. Oct. 25, 1995.]

FIRE INSURANCE EXCHANGE et al., Plaintiffs and Respondents, v. AMERICAN STATES INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Richards, Watson & Gershon, Erwin E. Adler, Robert C. Ceccon and Kayser O. Sume for Defendant and Appellant.

Carter & Chuang, Jeffrey J. Leist and Craig H. Bell for Plaintiffs and Respondents.

## OPINION

**YEGAN, J.**—American States Insurance Company (American States) appeals from a judgment ordering it to pay $487,500 on an action for equitable contribution. The trial court ruled that American States and another excess carrier, Truck Insurance Exchange (Truck), were co-insurers and share equally in the excess cost of settling a personal injury action brought against their insureds. We affirm. Substantial evidence supports the trial court's finding that the cost of settlement should be equally prorated because the excess policies provided overlapping coverage and insured against the same risk.

### Facts

In 1986 Azam Sher and his wife, Cynthia Yelvington, wanted to construct a home at 34 Appaloosa Lane in Bell Canyon. Alam Sher, Azam's father, a licensed general contractor in Oregon, moved to California, lived with Azam and Yelvington, and supervised construction of the new home.

On June 9, 1988, Russell Gebhardt was seriously injured when a wood scaffold collapsed at the jobsite. The scaffold, which was 12 feet high, had no handrails and was too narrow. Deitrick & Quin, Gebhardt's employer, built the scaffold with wood purchased by Alam. Alam hired Deitrick & Quin to do the framing work and had it sign a subcontract providing that it would furnish "all necessary scaffolding." Deitrick & Quin employees allegedly asked Alam to supply metal scaffolding but Alam ordered them to build the scaffold from wood at the jobsite.

### Underlying Settlement

Gebhardt filed suit against Alam, Azam, and Yelvington. (Gebhardt v. Sher (Super. Ct. Ventura County, No. 103355).) The complaint alleged causes of action against all defendants for peculiar risk, negligent maintenance and ownership, supervisory negligence and negligence.

Alam, Azam, and Yelvington tendered the complaint to their insurer carriers. Azam and Yelvington had a Fire Insurance Exchange (Fire) policy that provided $300,000 personal liability coverage and a $1 million umbrella policy issued by Truck.

Alam had a $300,000 dwelling fire insurance policy issued by Safeco Insurance Company of America (Safeco) and a $1 million umbrella policy with American States. Safeco denied coverage because its policy only provided premises liability coverage for Alam's house in Oregon. American States claimed that it had no obligation to defend or indemnify until the Fire and Truck policies were exhausted.

Fire and Truck defended Azam, Yelvington, and Alam subject to a reservation of the right to seek contribution from American States and Safeco. American States attended the underlying settlement conferences but did not contribute thereto. Fire and Truck settled the Gebhardt action for $1,275,000 and filed suit against Safeco and American States for declaratory relief and equitable subrogation

### Declaratory Relief Action

A 16-day court trial ensued. Fire and Truck presented expert testimony that the settlement was fair and reasonable. James Wesely, a liability claims examiner with over 35 years' experience, testified that Gebhardt had a strong case against Alam and Azam for negligence. Wesley opined that Alam was 100 percent liable and the peculiar risk cause of action did not play a paramount role in the decision to settle. Christopher Carder, the Truck

claims representative who participated in the settlement, agreed with Wesely and stated that Gebhardt's peculiar risk claim was not the primary theory of liability.

The parties stipulated that Azam and Yelvington were named insureds on the Truck policy and that "Alam Sher is also insured under the Truck policy, by definition, because the policy covers relatives residing in the household of the named insured." It was also stipulated that Azam and Yelvington were not insureds under the American States policy.

The trial court found that "Safeco had no duty to defend or indemnify Alam Sher in the Gebhardt case based on the dwelling fire policy as it was written. [¶] 2. Alam Sher was an insured under the Fire policy. The Fire condo owners policy satisfied the requirement in the American States umbrella policy for [$300,000] underlying personal liability insurance or comprehensive personal liability insurance."

The trial court further found that "[t]he Truck and the American States policies are both umbrella policies. Both cover personal liability. Both provide worldwide coverage. Each has similar 'other insurance' clauses which cannot both be given effect. Both must be ignored as mutually repugnant. Both umbrella policies admittedly apply to provide coverage for the Gebhardt claim with respect to the type of injury claimed, the claimed bases of liability, and the location of the occurrence. Neither umbrella policy is 'specific insurance for a specific risk' different from the other such that it would be rendered primary to the other umbrella policy. . . . [¶] 5. In stacking order, both umbrella policies are excess to the primary Fire policy, and both apply after the Fire policy."

The trial court concluded that Fire was the primary insurer and had to pay the first $300,000 of the settlement. Truck and American States were ordered to each contribute one-half of the $975,000 excess judgment, i.e., $487,500. Judgment was entered against American States for $487,500 plus prejudgment interest and costs.

*Standard of Review*

On review the judgment is presumed correct and all intendments and presumptions are indulged in favor of its correctness. "[T]he judgment must be upheld if it was supported by any substantial evidence, even if this is

against the weight of other contradictory evidence. [Citations.] . . . Where evidence is undisputed, but different inferences may be drawn therefrom, we are not at liberty to make our own inferences and decide the case accordingly; the conclusion of the trial court must be accepted, since it is for the trier of fact to resolve such conflicting inferences in the absence of a rule of law specifying the inference to be drawn. [Citations.]" (*CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 615-616 [222 Cal.Rptr. 276].)

### Equitable Contribution Based on Policy Limits

█ American States erroneously contends that the trial court erred by not prorating the policies based on the comparative fault of each insured. At trial, counsel for American States conceded that there was no controlling California authority and "[a]t some point the Court has to make an allocation—what it believes is a fair allocation among the defendants." Counsel argued that "there are various ways you can stack the policies. There is no right or wrong answer . . . ." Notwithstanding this concession, American States now claims that the trial court's allocation was erroneous.

The trial court found that American States and Truck were co-insurers because the umbrella policies insured against the same risk. We agree. Although each policy contained an "other insurance" clause, the clauses canceled one another out.[1] (*Olympic Ins. Co.* v. *Employers' Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 599 [178 Cal.Rptr. 908].) █ "When two 'excess-only' other insurance clauses collide, the courts will force both carriers to prorate, in derogation of the policy language. [Citations.] This rule is based, in large measure, on the fact that if both other-insurance clauses were given effect according to their terms, the insured would have no coverage." (*CSE Ins. Group* v. *Northbrook Property & Casualty Co.* (1994) 23 Cal.App.4th 1839, 1842-1843 [29 Cal.Rptr.2d 120].)

---

[1]"Most insurance policies contain 'other insurance' clauses that attempt to limit the insurer's liability where other insurance covers the same risk. Such clauses attempt to control the manner in which each insurer contributes to or shares a covered loss." (Croskey & Kaufman, Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1995) ¶ 8:10, p. 8-2.)

The American States umbrella policy provided in pertinent part: "7. **OTHER INSURANCE** [¶] If other collectible insurance with any other insurer is available to the **insured** covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the **retained limit** and the limit of liability hereunder) the insurance hereunder shall be in excess of, and not contribute with, such other insurance.

Truck's umbrella policy provided: "5. *Other Insurance.* This insurance is excess over other insurance (except insurance purchased to apply in excess of the sum of the **underlying insurance** limit and our liability limit covering the same loss."

"[T]he application of 'other insurance' clauses requires, as a foundational element, that there exist multiple policies applicable to the *same loss*." (*Pines of La Jolla Homeowners Assn.* v. *Industrial Indemnity* (1992) 5 Cal.App.4th 714, 723 [7 Cal.Rptr.2d 53].) Where, as here, two insurance companies insure the same risk and one company pays the loss (i.e., Truck), it may seek contribution from the other (i.e., American States). (*Pylon, Inc.* v. *Olympic Ins. Co.* (1969) 271 Cal.App.2d 643, 648-649 [77 Cal.Rptr. 72].)

 American States contends that the doctrine of equitable contribution between co-insurers does not apply because the policies cover different "risks" and different insureds. The American States policy insured Alam but not Azam or Yelvington. American States asserts that it was not a co-insurer because Azam and Yelvington owed a nondelegable duty as landowners to provide Gebhardt a safe work place.

We disagree with American States's analysis. It erroneously assumes that Alam had no potential liability on the cause of action for peculiar risk. The complaint alleged such liability against Alam, which is permitted by our Supreme Court. (*Privette* v. *Superior Court* (1993) 5 Cal.4th 689, 701 [21 Cal.Rptr.2d 72, 854 P.2d 721].) American States further assumes that every personal injury involving scaffolding is a peculiar risk case rendering the landowner 100 percent liable. We disagree. Under American States's construction of the law, a landowner's insurer could never seek contribution from someone functioning as a general contractor who created the special risk. The law is not that black and white.

In *Privette* v. *Superior Court, supra*, 5 Cal.4th 689, our Supreme Court held: "Even when work performed by an independent contractor poses a special or peculiar risk of harm, however, the person who hired the contractor will not be liable for injury to others if the injury results from the contractor's 'collateral' or 'casual' negligence. [Citations.] An independent contractor's negligence is collateral, we have said, when the negligence involves an 'operative detail of the work, as distinguished from the general plan or method to be followed.' [Citation.] But, as we have also acknowledged, it is often difficult to distinguish those risks that are inherent in the work from those that are collateral, and the line to be drawn between the two types of risks is 'shadowy.' [Citation.]" (*Id.*, at p. 696.)

 Here, the causes of action for negligence and peculiar risk overlapped. Gebhardt's complaint alleged that the defendants, including Alam, "were, and are, the owners, employers, contractors, and/or developers of the project site at which plaintiff, Russell Gebhardt, was injured." Alam functioned as a general contractor and personally took charge of the general plan

and method of construction. Gebhardt claimed that Alam refused to provide metal scaffolding and ordered Gebhardt's employer to construct the scaffolding from wood. Alam supervised the work and visited the job site twice a day. Attorney Howard Cho, who defended Azam, Alam and Yelvington, opined that Alam had potential liability under the peculiar risk doctrine because he functioned as the general contractor. ■ As indicated, both the owner of land and a general contractor who hires an independent contractor may have liability pursuant to the peculiar risk doctrine. (*Privette v. Superior Court, supra*, 5 Cal.4th at p. 701.)

■ The court found that "Alam Sher, Azam Sher, and Cynthia Yelvington were all at risk of liability in the Gebhardt suit. Azam and Cynthia had greater exposure than Alam under the doctrine of peculiar risk before *Privette*. Alam had greater exposure than they based on active negligence. All had significant risk of exposure and there was no utility for settlement to allocate their individual contribution to the overall risk." The court made an implied finding that the liability of Alam on one hand, and Azam and Yelvington on the other hand, was approximately the same for settlement purposes. In the exercise of its equitable discretion, the trial court concluded that the umbrella policies should be equally prorated because the policy limits were the same. This was not an abuse of discretion. (E.g., *Employers Reinsurance Corp.* v. *Phoenix Ins. Co.* (1986) 186 Cal.App.3d 545, 553 [230 Cal.Rptr. 792] [liability prorated among three successive carriers according to applicable policy limits].)

American States contends that it would be more equitable to allocate the settlement based on the number of insureds in each policy. Such an analysis would mean that American States would contribute $325,000 (one-third of $975,000) rather than $487,500. The trial court found that "[c]ounting insureds is an unsatisfactory way to allocate payment in this case." We agree. Assuming Azam and Yelvington had an additional partner in the project, American States would argue that it need only pay 25 percent of the $975,000. Given the nature of the underlying claim, allocation based on the number of insureds makes little, if any, sense.

■ Under California law, the reciprocal rights of co-insurers are based on principles of equity. (*Amer. Auto Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 195-196 [318 P.2d 84].) California courts have declined to formulate a definitive rule for equitable contribution. (See *CNA*

Casualty of California v. *Seaboard Surety Co., supra*, 176 Cal.App.3d 598, 619.)

"We expressly decline to formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which affect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers. [Citation.] Moreover, we affirm the wisdom expressed in *Amer. Auto Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 195-196 [318 P.2d 84]: 'The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. . . . Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders.' [Citation.]" (*Signal Companies Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 369 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 975].)

American States' reliance upon *PepsiCo, Inc.* v. *Continental Cas. Co.* (S.D.N.Y. 1986) 640 F.Supp. 656 is misplaced. There, a corporation brought suit against an insurer to recover money paid on behalf of its officers and directors to settle a securities fraud action. The policy required that PepsiCo allocate the settlement costs attributable to the directors and officers. The court held that contribution should be based on the liabilities of the respective parties but acknowledged that "[t]hese allocations are often made, albeit only as approximations, according to some notion of relative fault." (*Id.*, at p. 662.)

Here the trial court ordered American States and Truck to share the excess settlement costs because the policy limits were the same. There was no policy requirement of allocation of settlement costs as was the case in *PepsiCo, Inc.* v. *Continental Cas. Co., supra*, 640 F.Supp. 656.

American States' reliance upon *Slottow* v. *American Cas. Co.* (9th Cir. 1993) 10 F.3d 1355, is also misplaced. There a bank's board of directors approved a settlement with disgruntled investors for $4,750,000. It allocated 96 percent of the fault to Ralph Slottow, president of the bank's subsidiary, and 0 percent to the bank. The bank then sought reimbursement from American Casualty Company, the directors' and officers' Liability (D and O) carrier for the bank. The allocation of fault was not the product of adverse negotiation between the bank and Slottow. The Ninth Circuit viewed

the allocation with "considerable suspicion" (*id.*, at p. 1359) because it was structured "for strategic reasons" (*id.*, at p. 1359) to create 96 percent indemnification from the D and O carrier. That was not a "good faith" allocation of fault. (*Id.*, at p. 1360.) By contrast, here there was no underlying allocation. As we shall soon explain, there is no California rule requiring allocation.

■ American States has cited no California authority holding that equitable contribution requires a specific finding of each insured's comparative fault. Such a rule would hamper settlements and require the defendant to prove its own fault before the defendant's insurer could seek equitable contribution. (E.g., *Mullin Lumber Co.* v. *Chandler* (1986) 185 Cal.App.3d 1127, 1132 [230 Cal.Rptr. 122] [cross-complaint by lumber company against general contractor for equitable indemnity where carpenter fell from collapsed scaffolding built from lumber purchased for construction of house].)

"A claim such as the instant case for contribution among insurers providing overlapping coverage for the same insured rests on equitable principles. [Citation.] However, in cases involving multiple policies covering the same loss, the courts have allocated the burden of paying among several insurers without reference to questions of the comparative fault or negligence of such insurers, because their obligation to protect the insured arises from a contract, *not* because the insurers were negligent or at fault. [Citation.] Thus, in cases involving duplicate or overlapping insurers the courts have prorated the responsibility by focusing on contractual issues rather than on 'fault' concepts [citations], and have ordered proration based on the proportion each insurer's coverage bore to the total coverage provided by all policies [citations]." (*Hartford Accident & Indemnity Co.* v. *Superior Court* (1994) 29 Cal.App.4th 435, 440 [34 Cal.Rptr.2d 520].)

*Trial Within a Trial*

American States asserts that it is entitled to a factual finding of Alam's comparative fault, and absent such a determination, there is no legal basis to support the judgment. The trial court served the parties with a tentative decision stating that "a trial within a trial to establish comparative fault and liability, if any, is . . . unsatisfactory . . . ." If American States wanted special findings concerning each insured's comparative fault, it should have requested findings or moved for new trial. (Code Civ. Proc., §§ 632, 662.) It failed to do so.

American States also asserts that Truck presented no evidence that Alam was liable on a negligence theory. The record is to the contrary. Alam

functioned as general contractor, supervised the project, hired the subcontractors, and ordered Gebhardt's employer to construct the scaffolding. Substantial evidence supported the trial court's finding that Alam, because of his active negligence, had exposure equal to that of Azam and Yelvington.

*Site-specific Coverage*

■ American States finally argues that the Truck policy provided site-specific insurance and was therefore primary to the American States policy. The trial court rejected the argument and found that "[n]either umbrella policy is 'specific insurance for a specific risk' different from the other such that it would be rendered primary to the other umbrella policy." No error occurred.

Truck's underwriting and claims experts testified that the insurance industry did not consider personal umbrella policies "site specific." The Truck policy provided worldwide coverage. Substantial evidence was presented that the insuring clauses were not affected by the policy declaration page or the policy application listing the construction site address.

*Conclusion*

American States' remaining arguments have been considered and are without merit. We agree that an insurer may not settle a case and foist the settlement costs on another insurer who insured different risks. The assertion that American States was "victimized" by Truck's and Fire's failure to allocate the settlement costs has no factual basis. American States and Truck insured the same risk and should share in the excess settlement cost.

"California follows the general rule that an insurer that discharges a common obligation of another insurer may seek contribution from the second insurer. [Citations.] The insurers' 'respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.' [Citation.] No specific rule governs this area of the law. Courts should consider the nature of the claim, the relation of the insured to the insurers, the particulars of each policy and any other equitable considerations. [Citation.]" (*Northern Ins. Co. of New York* v. *Allied Mut. Ins.* (9th Cir. 1992) 955 F.2d 1353, 1360.)

Substantial evidence supports the finding that American States and Truck should share the excess settlement costs. The umbrella policies cover the same risk and have the same policy limits. "Where two insurers cover the same risk, the costs of settlement should be shared between them pro rata in

proportion to their respective coverage of the risk; otherwise, one will profit at the expense of another. [Citation.]" (*Golden Eagle Ins. Co.* v. *Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1390 [25 Cal.Rptr.2d 242].)

The judgment is affirmed. American States is ordered to pay costs on appeal.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied November 16, 1995, and the opinion was modified to read as printed above.