The HOUSING GROUP; The Housing Group–Northern California; Hidden Hills II Investors, Plaintiffs,

v.

GERLING AMERICA INSURANCE COMPANY, INC., Defendant.

No. C 98–01209 CW.

United States District Court, N.D. California.

July 26, 2000.

Jon–Marc Dobrin, Antonio A. Celaya, Jon–Marc Dobrin Law Offices, San Francisco, CA, for The Housing Group, plaintiff.

J. Russell Stedman, Thomas R. Beer, Barger & Wolen LLP, Los Angelse, CA, for Gerling America Insurance Company, Inc., defendant.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION, DENYING DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION, AND CONDITIONALLY DISMISSING PLAINTIFFS' COMPLAINT

WILKEN, District Judge.

In this action, Plaintiffs The Housing Group, The Housing Group–Northern California, and Hidden Hills II Investors (collectively referred to in this order in the singular as THG), acting as the assignees of United National Insurance (UNI), seek contribution from GAIC. THG and GAIC have settled all other claims raised by THG's complaint. Moreover, the parties have agreed that, if the Court determines that GAIC is liable for contribution, GAIC will pay THG a certain confidential sum of money. Therefore, the sole remaining dis-

puted issue is whether THG, as UNI's assignee, is entitled to any contribution from GAIC.

Specifically, the question presented is whether a primary insurer is entitled to contribution from another primary insurer, where the first insurer pays the insured's claim, the first insurer's policy disclaims any right to contribution from other primary insurers, and the second insurer's policy asserts that coverage of the claim should be prorated between all primary insurers. The parties have stipulated to the facts relevant to answering this question. THG moves for summary adjudication of liability,[1] and GAIC cross-moves for summary adjudication of no liability. A hearing on the cross-motions was held on July 7, 2000. Having considered all of the papers filed by the parties and oral argument on the motions, the Court grants THG's motion and denies GAIC's motion. Further, in light of the parties' representation that their settlement agreement resolves all other outstanding issues in this case, the Court conditionally dismisses this case, with prejudice.

## BACKGROUND

Three insurance policies are relevant to the case at bar. The first policy, in effect from November 12, 1992 to November 1, 1993, was issued by UNI to THG, and includes comprehensive general liability coverage with a policy limit of $1,000,000. *See* Joint Statement of Undisputed Facts ¶ 4 & Ex. B (first UNI policy). The second policy, in effect from November 1, 1993 to November 1, 1994, was also issued by UNI to THG, and also includes comprehensive general liability coverage with a policy limit of $1,000,000. *See id.* ¶ 4 & Ex. C (second UNI policy). The third policy, in effect from November 1, 1994 to December 17, 1995, is a comprehensive general liability policy that was issued by

GAIC to THG, with a policy limit of $1,000,000. *See id.* ¶ 3 & Ex. A (GAIC policy).

Both of the UNI policies contain a clause that states:

> It is hereby understood that the Insurance provided by [the comprehensive general liability] Section of the Policy shall be primary and that any other insurance provided to any Insured shall be in excess of and shall not contribute with the insurance provided hereunder.

First UNI Policy at 50, § B.H.iii; Second UNI Policy at 52, § B.H.iii. The GAIC policy states that, with certain exceptions that are not applicable in this case, its coverage is primary. *See* GAIC Policy, General Liability Coverage Form at 11, § IV.4.a. If there is any other valid and collectible insurance that is also primary, the GAIC policy provides that GAIC will share in coverage, *see id.*, according to the following method:

> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total of applicable limits of insurance of all insurers.

GAIC Policy, General Liability Coverage Form at 11, § IV.4.c.

Pursuant to the UNI policies, UNI made certain payments to THG for continuing losses incurred by THG as a defendant in construction defect suits arising out of events that occurred during the

---

1. THG denominates its motion as a motion for summary judgment. However, judgment cannot enter in THG's favor without a determination of the amount of damages. Although the parties represent that they have stipulated to a measure of damages in the event of liability, the stipulated sum is confidential and has not been revealed to the Court. Accordingly, the Court construes THG's motion as a motion for summary adjudication.

periods in which three policies were in effect. *See id.* ¶ 5. The parties agree that these losses were covered under all three policies, and that UNI and GAIC owed THG a duty to defend. *See id.* Prior to the filing of the complaint in this case, THG and UNI settled THG's coverage claim against UNI. As part of this settlement, UNI assigned THG any contribution rights UNI might have under the UNI policies. *See id.* ¶ 6. GAIC does not dispute the validity of this assignment. *See id.*

## DISCUSSION

### I. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir.1987).

■ The sole claim that remains to be resolved in this case is one for equitable contribution. In the insurance context, equitable contribution grants an insurer that has paid a claim the right to recover from a co-insurer, where both insurers were obliged to indemnify or defend the claim, and where the co-insurer did not share, or did not sufficiently share, in covering the claim. *See Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1293, 77 Cal.Rptr.2d 296 (1998). "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." *Id.*

In adjudicating equitable contribution claims, courts are often called upon to resolve conflicts that arise from the interaction of the language of the co-insurers' respective policies. Insurance policies commonly include "other insurance" clauses, which attempt to limit the insurer's obligations in the event that there is another policy that covers the same risk. *See Fire Ins. Exch. v. American States Ins. Co.*, 39 Cal.App.4th 653, 659 n. 1, 46 Cal.Rptr.2d 135 (1995).

■ In one common circumstance, both insurers' policies contain "excess only" other-insurance clauses. A policy with an excess-only other-insurance clause claims that, in the event that there is another policy covering the same risk, its coverage is only in excess to that other policy's coverage. Where two co-insurers' policies both contain such a clause, courts refuse to give effect to either other-insurance clause, and instead prorate coverage between the two insurers. *See Argonaut Ins. Co. v. Transport Indem. Co.*, 6 Cal.3d 496, 507, 99 Cal.Rptr. 617, 492 P.2d 673 (1972). "This rule is based, in large measure, on the fact that if both other-insurance clauses were given effect according to their terms, the insured would have no coverage." *CSE Ins. Group v. Northbrook Property & Cas. Co.*, 23 Cal.App.4th 1839, 1842–43, 29 Cal.Rptr.2d 120 (1994).

In another common scenario, two insurers have issued policies that cover the same risk, and one insurer's policy contains an excess-only other-insurance clause, while the other's policy contains a "proration" other-insurance clause. A proration other-insurance clause purports to limit the policy's coverage to a pro rata share [2] of the doubly-covered loss. In this situation, the insurer that issued the policy with the excess-only clause argues that its policy does not require contribution until

---

**2.** The precise method for prorating the loss differs from policy to policy. Some policies call for co-insurers to match each others' coverage, dollar-for-dollar, up to their respective policy limits. Others call for a division of coverage in proportion to each insurer's policy limit. The GAIC policy's other-insurance clause asserts that the former method shall apply if the other policies allow for it, and otherwise that the latter method shall be followed.

the other policy's coverage limits are exhausted. The insurer with the proration clause argues that its policy requires that the co-insurers share the responsibility for coverage. Historically, one line of California cases held that the excess-only provision controlled, while another held that coverage obligations should be prorated between the co-insurers. *See Donahue Constr. Co. v. Transport Indem. Co.,* 7 Cal.App.3d 291, 302, 86 Cal.Rptr. 632 (1970) (surveying cases). Although no California Supreme Court decision has expressly adopted or repudiated either line of authority, in recent years, California Court of Appeal decisions appear unanimously to follow the reasoning of *CSE Insurance Group,* and to hold that the coverage obligations should be prorated. *See, e.g., Pacific Indem. Co. v. Bellefonte Ins. Co.,* 80 Cal.App.4th 1226, 1236–38, 95 Cal.Rptr.2d 911 (2000); *Fireman's Fund v. Maryland Cas. Co.,* 65 Cal.App.4th 1279, 1294–307, 77 Cal.Rptr.2d 296 (1998).

In *CSE Insurance Group,* the court offered several rationales for its conclusion that excess-only clauses must bow to proration clauses. The court reasoned that the insurer with the excess-only clause has no expectation that its other-insurance clause will always be given effect, because California courts disregard such clauses when two co-insurers' policies both include them. *See* 23 Cal.App.4th at 1845, 29 Cal. Rptr.2d 120. Moreover, the fact that courts require proration in the face of conflicting excess-only clauses, notwithstanding that neither policy suggests proration, "manifest[s] a court-made public policy that proration is a favored method of apportioning loss among those who have contracted to insure against it." *Id.* Next, by analogy to cases disfavoring "escape" clauses[3] as contrary to public policy, the court concluded that excess-only clauses should also be disfavored, though to a lesser extent than escape clauses, because insurers use excess-only clauses to attempt to avoid coverage for an otherwise covered

loss. *See id.* Furthermore, because a conflict between two excess-only clauses is resolved by prorating coverage, it would be anomalous to deny proration when the facts are altered such that one of the policies actually calls for proration. *See id.* at 1846, 29 Cal.Rptr.2d 120.

In deciding contribution cases, California courts often note that the right to contribution is based on equity, and not on contract. *See, e.g., American Auto. Ins. Co. v. Seaboard Sur. Co.,* 155 Cal.App.2d 192, 195–96, 318 P.2d 84 (1957) ("The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other"); *Signal Cos. v. Harbor Ins. Co.,* 27 Cal.3d 359, 369, 165 Cal.Rptr. 799, 612 P.2d 889 (1980) (quoting *American Auto.*). Because the right to contribution is based on equity rather than on contract, the respective rights of the co-insurers are "not controlled by the language of their contracts with the respective policy holders." *American Auto.,* 155 Cal.App.2d at 196, 318 P.2d 84; *Signal Cos.,* 27 Cal.3d at 369, 165 Cal.Rptr. 799, 612 P.2d 889 (quoting *American Auto.*).

Nevertheless, the language of the policies underlying a contribution claim is not irrelevant. "Contractual terms of insurance coverage are honored wherever possible. The courts will therefore generally honor the language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue." *Fireman's Fund,* 65 Cal.App.4th at 1305, 77 Cal.Rptr.2d 296.

## II. THG's Equitable Contribution Claim

The case at bar presents an unusual twist on the often-encountered scenario of a conflict between an excess-only clause and a proration clause. In that more common situation, each insurer in essence argues that its policy language should control. *See, e.g., CSE Ins. Group,*

---

**3.** An escape other-insurance clause purports to relieve a primary insurer of any coverage obligation, including excess coverage, if there is any other primary insurance.

23 Cal.App.4th at 1844, 29 Cal.Rptr.2d 120 ("In effect, each insurer here asks us to implement the language in its policy and ignore the language in the other policy"). In this case, however, THG, as UNI's assignee, seeks to enforce GAIC's policy language,[4] and GAIC seeks to enforce UNI's policy language.

GAIC argues that this factual twist is determinative. According to GAIC, there is no conflict between the GAIC policy and the UNI policies. This is plainly incorrect. The GAIC policy's other-insurance clause unambiguously calls for one of two methods of proration, depending on the terms of the other policies. In no event does it suggest that GAIC will not contribute. Denying THG, as UNI's assignee, a right to contribution based on the language of the UNI policies thus would conflict with the plain language of the GAIC policy.[5]

GAIC is correct that the conflict between the policies' other-insurance clauses does not raise the same public policy concerns as a conflict between excess-only and proration clauses. Unlike that more common conflict, in which one insurer's other-insurance clause purports to limit the insurer's coverage obligation to a portion of the loss, while the other insurer's other-insurance clause purports to eliminate that insurer's coverage obligation altogether, in the instant case, UNI's policies obliged UNI to provide full coverage, while

GAIC's policy obliged GAIC to provide partial coverage. The conflict in the instant case thus did not threaten to "strand an insured between insurers disclaiming coverage." *See Commerce & Indus. Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal. App.4th 739, 744–45, 89 Cal.Rptr.2d 415 (1999).

However, either GAIC or THG, as UNI's assignee, can argue equally that, if it does not prevail, it is being punished for agreeing to do too much. Neither party has cited any cases in which California courts have resolved this conundrum. There are three approaches the California courts might take. First, courts could take a laissez-faire approach by holding that neither insurer has been forced to do anything that it did not agree to do, and thus that equity does not require any intervention by the courts. Under this approach, courts would not expressly favor either of the conflicting clauses. Second, courts could hold that the proration clause should be enforced, because "proration is a favored method of apportioning loss among those who have contracted to insure against it." *CSE Ins., Group*, 23 Cal. App.4th at 1845, 29 Cal.Rptr.2d 120. Third, courts could hold that the clause disclaiming contribution rights should be enforced, perhaps because that is the more generous clause, from the insured's perspective.

4. THG also raises several alternative arguments that lack merit. First, THG argues that THG and UNI were free, as are any parties to contracts, to modify their contractual agreement at any time. THG offers no evidence, however, that THG and UNI ever did, in fact, modify the other-insurance provision of the UNI policies. Second, THG argues that all of the policies at issue offered coverage in excess to THG's self-insurance, and that California law requires proration between excess policies. This misstates the law. Where two policies each purport to offer coverage in excess to the other policy, California courts require proration. *See, e.g., Argonaut Ins.*, 6 Cal.3d at 507, 99 Cal.Rptr. 617, 492 P.2d 673. The fact that two policies offer coverage in excess to coverage that is offered by some other insurer that is not a party to the contribution dispute is irrelevant. *See CSE Ins.*

*Group*, 23 Cal.App.4th at 1843 n. 1, 29 Cal. Rptr.2d 120. By analogy, it is also irrelevant that UNI and GAIC each offered coverage in excess to THG's self-insurance.

5. Under an interpretation not advanced by GAIC, there would be no conflict. Because UNI committed to covering the entire loss, while GAIC committed to covering, given the presence of other primary insurance, a fraction of it, THG, in its capacity as an insured, might have claimed an entitlement to recover, in total, more than its actual loss. The fact that two policies cover the same risk, however, does not entitle the insured to recover an amount in excess of its actual loss. *See Fireman's Fund*, 65 Cal.App.4th at 1295, 77 Cal. Rptr.2d 296 (noting, in dicta, that "the insured's right of recovery is restricted to the actual amount of the loss").

GAIC appears to argue for the first approach. Under this analysis, the fact that GAIC, by refusing to contribute to another primary insurer's coverage of THG's loss, has managed to do less than it actually agreed to do is irrelevant. Assuming that this is the proper approach, had UNI and GAIC originally shared in the coverage of THG's loss, pursuant to the terms of the GAIC policy, GAIC would be without recourse in contribution to seek reimbursement from UNI, notwithstanding that UNI's policies promised THG full coverage, without contribution from other primary insurers.

The Court is convinced that California courts would reject this approach. The rule of equitable contribution is intended, in part, "to prevent one insurer from profiting at the expense of others." *Fireman's Fund*, 65 Cal.App.4th at 1293, 77 Cal. Rptr.2d 296. The laissez-faire approach would reward the insurer that initially failed to comply with its own other-insurance clause, at the expense of the insurer that did comply with its other-insurance clause. The allocation of the burden of coverage would hinge on which insurer acted first. That fact, in turn, would often depend on the insured's decision to whom it should first tender its claim. This approach would thus violate "the common sense principle that ... the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant." *Id.* at 1295, 77 Cal. Rptr.2d 296. Moreover, because this approach relies on the post-incident conduct of the insurers, the proper allocation of the burden of coverage would be, at the time of the incident triggering coverage, indeterminable. Such a rule would ignore the *CSE Insurance Group* court's exhortation that, "[i]n this field, the law's goal should be certainty." 23 Cal.App.4th at 1844, 29 Cal.Rptr.2d 120.

The choice, then, is between the second and third approaches. Here, the choice is simple. GAIC has offered no rationale, whether originating in contract, equity or public policy, that supports the third approach. First, although a policy that dis-claims any right to limit coverage based on the presence of other primary coverage is arguably, from the insured's perspective, the more generous of the conflicting policies, because the insured is not, in a case such as this, at risk of being deprived of its bargained-for coverage, equity does not compel enforcement of the more insured-favorable clause. Second, irrespective of the conflicting other-insurance clauses, equity would appear to favor proration between two insurers that have agreed to provide primary coverage for the same risk. Third, given that the conflicting other-insurance clauses cannot be reconciled without granting a boon to one insurer, equity supports granting that windfall to the insurer whose policy made the least attempt to shirk the burden of primary coverage.

The Court therefore concludes that the California Supreme Court likely would hold that a conflict between an other-insurance clause that disclaims any right to contribution and a proration other-insurance clause should be resolved by prorating coverage between the co-insurers. The Court thus grants THG's motion for summary adjudication and denies GAIC's motion for summary adjudication.

CONCLUSION

For the foregoing reasons, the Court GRANTS THG's motion for summary adjudication (Docket No. 34) and DENIES GAIC's motion for summary adjudication (Docket No. 39). In light of the parties' representation, through counsel, that they have stipulated to a measure of damages in the event of liability on the contribution claim and that they have settled all of THG's other claims, the Court DISMISSES THG's complaint with prejudice; provided, however, that if any party hereto shall certify to the Court, within ninety days from the date of this order and with proof of service on opposing counsel of a copy of the certification, that the agreed consideration for settlement has not been delivered over, the dismissal shall stand

vacated, and this cause shall forthwith be restored to the calendar to be set for trial.