Opinion
 

 FROEHLICH, J.
 

 This writ petition arises from the effort by real party in interest Landmark Insurance Company (Landmark) to extricate itself from a “bad faith” lawsuit. Landmark’s insured had alleged that numerous insurers including Landmark had provided coverage for a claim, that they had failed to defend and indemnify in connection with that claim, and that this failure breached their contracts as well as the implied covenant of good faith and fair dealing. The insured later settled with Landmark. As a condition to settling, Landmark required that it be extricated from the nonsettling insurers’ cross-claims against it for contribution. Landmark sought such exoneration through the vehicle of the “good faith settlement” statute, Code of Civil Procedure section 877.6.
 
 [1]
 

 We must now decide the question we raised but ultimately did not decide in
 
 Fireman’s Fund Ins. Co.
 
 v.
 
 Maryland Casualty Co.
 
 (1994) 21 Cal.App.4th
 
 *438
 
 1586 [26 Cal.Rptr.2d 762]. Specifically, the issue is whether the protections afforded by section 877.6 apply when the lawsuit is brought by the insured against multiple insurers allegedly covering the same “loss,” one insurer settles with the insured, and the settling insurer seeks to use the order approving the settlement (in good faith under section 877.6) to avoid cross-claims for contribution from other insurers.
 

 Factual Background
 

 1.
 
 The Underlying Claim
 

 The relevant facts are undisputed. In 1980 a lawsuit was filed by Del Coronado Santee Townhomes Association (hereafter the Association) against various defendants alleging that the Santee development had construction defects. The 1980 action settled. However, as part of that settlement D.G. & Associates (successor in interest to the Santee developer, hereafter D.G.) agreed that (1) dismissal of the soils-related claims would be without prejudice; (2) the release would not cover soils-related damages occurring thereafter; and (3) D.G. would extend the statute of limitations on any later action by the Association which seeks recovery for such nonreleased claims.
 

 In 1989 the Association again filed suit against D.G. for damages. The 1989 complaint alleged various theories and sought recovery for, among other things, the preserved soils-related injuries.
 

 2.
 
 The Coverage Dispute
 

 The insured asserted that various insurers owed defense and indemnification obligations respecting the 1989 lawsuit. Among the insurers allegedly liable to defend and indemnify were Hartford Accident and Indemnity Company (Hartford), the petitioner herein, and Landmark.
 
 [2]
 
 Hartford interposed several bases for avoiding any defense for and indemnity obligations to the insured. Alternatively, however, Hartford alleged that if found liable to the insured, it was entitled to a declaration as to the liabilities of other insurers (including Landmark) who might owe similar obligations to the insured, and to contribution or indemnity from such insurers.
 

 
 *439
 
 3.
 
 The Settlement
 

 In early 1994 Landmark agreed to settle with the insured for $110,000, contingent on an order being entered under section 877.6 barring any claims or cross-claims against it for contribution or indemnity. Landmark supported its motion with an explanation of why its potential exposure to the insured was minimal, and argued the negotiations were arm’s length, without collusion, and $110,000 was “in the ballpark” as required by
 
 Tech-Bilt, Inc.
 
 v.
 
 Woodward-Clyde & Associates
 
 (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159].
 

 Hartford opposed the motion, arguing (1) section 877.6 did not apply to this case; (2) the settlement was not in good faith or reflective of Landmark’s potential liability; and (3) no apportionment of the $110,000 was made between defense and indemnity obligations.
 
 [3]
 
 The court granted the motion and ordered dismissal of Hartford’s cross-claims for contribution and indemnity. This order is the subject of this petition for writ of mandamus.
 

 The Trial Court Erred in Applying Section 877.6 to This Action Because Hartford and Landmark Were Neither Joint Tortfeasors nor Co-Obligors on a Contract Debt Entered After 1988, and Hence Section 877.6 Is Inapplicable to Hartford’s Claims
 

 Section 877.6 is designed to encourage settlements by providing the settling party with protection against further litigation with, and exposure to, those parties alleged to be joint tortfeasors with the settling party.
 
 (Far West Financial Corp.
 
 v.
 
 D & S Co.
 
 (1988) 46 Cal.3d 796, 810-811 [251 Cal.Rptr. 202, 760 P.2d 399].) To achieve that goal, section 877.6 provides a mechanism for obtaining a court order approving the “good faith” nature of the settlement. The order would provide the following protection: “A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.” (§ 877.6, subd. (c).)
 

 Section 877.6 shows, on its face, that its protective cloak is limited. It bars only those claims by one joint tortfeasor against the settling tortfeasor for equitable comparative contribution based on comparative negligence or comparative fault. We therefore must decide whether Hartford’s
 
 *440
 
 claim for contribution against Landmark is one for equitable comparative contribution or indemnity based on comparative negligence or fault, and whether Hartford and Landmark can be classified as joint tortfeasors.
 
 [4]
 

 A claim such as the instant one for contribution among insurers providing overlapping coverage for the same insured rests on equitable principles.
 
 (Truck Ins. Exchange
 
 v.
 
 Torres
 
 (1961) 193 Cal.App.2d 483, 490 [14 Cal.Rptr. 408].) However, in cases involving multiple policies covering the same loss, the courts have allocated the burden of paying among several insurers without reference to questions of the comparative fault or negligence of such insurers, because their obligation to protect the insured arises from a contract,
 
 not
 
 because the insurers were negligent or at fault. (See, e.g.,
 
 Continental Cas. Co.
 
 v.
 
 Zurich Ins. Co.
 
 (1961) 57 Cal.2d 27, 34-38 [17 Cal.Rptr. 12, 366 P.2d 455] [defending insurer is entitled to compel contribution from nonparticipating insurers; amount of contribution is determined by examining contractual language to adjust responsibility in an equitable manner].) Thus, in cases involving duplicate or overlapping insurers the courts have prorated the responsibility by focusing on contractual issues rather than on “fault” concepts (see
 
 Pacific Employers Ins. Co.
 
 v.
 
 Maryland Casualty Co.
 
 (1966) 65 Cal.2d 318, 327-329 [54 Cal.Rptr. 385, 419 P.2d 641], overruled on other grounds in
 
 Herzog
 
 v.
 
 National American Ins. Co.
 
 (1970) 2 Cal.3d 192, 198-199 [84 Cal.Rptr. 705, 465 P.2d 841]), and have ordered proration based on the proportion each insurer’s coverage bore to the total coverage provided by all policies (see, e.g.,
 
 Government Employees Ins. Co.
 
 v.
 
 St. Paul Fire etc. Ins. Co.
 
 (1966) 243 Cal.App.2d 186, 191-192 [52 Cal.Rptr. 317] [St. Paul policy had $100,000 limits; GEICO policy had
 
 *441
 
 $20,000 limits—GEICO required to share one-sixth of costs, based on $20,000/$120,000 ratio]).
 

 Section 877.6, subdivision (c) is limited to “claims ... for equitable comparative contribution . . .
 
 based on comparative negligence or comparative fault.”
 
 Because an action by one insurer seeking contribution from a nonparticipating insurer does not depend on “fault” concepts but is based on an equitable apportionment of the contractual undertakings (see
 
 Hartford Acc. & Indem. Co.
 
 v.
 
 Pacific Indem. Co.
 
 (1967) 249 Cal.App.2d 432, 436-438 [57 Cal.Rptr. 492]), the bar of section 877.6, subdivision (c) is inapplicable.
 

 Our conclusion is reinforced by the recognition that the focus of the statutory scheme is on settlements by a plaintiff with one of several parties alleged to be jointly liable for the same tortious injury.
 
 [5]
 
 However, Hartford and Landmark are not jointly liable to their common insured. Instead, each insurer’s defense and indemnification liabilities, if any, are
 
 several
 
 and depend on the terms and conditions of the policy of each, neither being liable for the policy obligations owed by the other. (See, e.g., 8A Appleman, Insurance Law and Practice (1981) § 4908, p. 381.) Since neither Hartford nor Landmark is liable to pay the contractual obligations of the other, both are severally (rather than jointly) liable for their respective breaches of contract. Nor are they joint tortfeasors. Even if Hartford or Landmark committed the tort of breach of the implied covenant of good faith, the bad faith of either would depend solely on its own several conduct. Because their torts would be severable, and neither would be liable for the extracontractual damages (such as emotional distress) caused by the other’s bad faith (Civ. Code, § 1431.2), they are in no sense “joint tortfeasors” to which the provisions of section 877.6 might apply. (See, e.g.,
 
 Carr
 
 v.
 
 Cove
 
 (1973) 33 Cal.App.3d 851, 853-856 [109 Cal.Rptr. 449] [defendants not joint tortfeasors, and statutes for contribution among joint tortfeasors inapplicable where a defendant’s conduct is separate and has caused distinct, divisible injuries].)
 

 Disposition
 

 Let a writ of mandate issue ordering the superior court to vacate its order of March 17, 1994, to the extent such order bars any further claims against Landmark for equitable contribution, equitable subrogation, partial or comparative indemnity based on comparative negligence or comparative fault or
 
 *442
 
 contract and dismisses Landmark from the consolidated actions, and further ordering the court to enter a new and different order consistent with this opinion.
 

 Work, Acting P. J., and Nares, J., concurred.
 

 A petition for a rehearing was denied November 8, 1994, and the petition of real party in interest for review by the Supreme Court was denied February 16, 1995.
 

 [1]
 

 All statutory references are to the Code of Civil Procedure unless otherwise specified.
 

 [2]
 

 Nmnerous insurance companies in addition to Hartford allegedly provided coverage to D.G. or the insured during the relevant periods. One such insurer, Great American Insurance Company (Great American), has joined in Hartford’s petition herein. Although Great American raises some factual distinctions which purportedly improve its position vis-a-vis Landmark, Great American merely joins in the legal arguments raised by Hartford. Because Hartford’s legal arguments appear dispositive, we will refer in this opinion to “Hartford,” recognizing our disposition will also benefit Great American.
 

 [3]
 

 Hartford also argued that the court was procedurally limited to approving the settlement under section 877.6 and had no statutory authority to dismiss Hartford’s complaint.
 

 [4]
 

 We quickly dispose of the other possible application of section 877.6—that is, to “coobligors.” Although Landmark loosely refers to itself and Hartford as being “co-obligated,” and cites
 
 Diamond Heights Homeowners Assn.
 
 v.
 
 National American Ins. Co.
 
 (1991) 227 Cal.App.3d 563 [277 Cal.Rptr. 906] as supporting the notion that a primary and an excess insurer are co-obligors under the statute, we previously explained that we disagreed with
 
 Diamond Heights
 
 because “by definition a primary and an excess insurer are
 
 serial
 
 obligors on separate contracts, not co-obligors on
 
 a
 
 contract debt.”
 
 (Fireman’s Fund Ins. Co.
 
 v.
 
 Maryland Casualty Co., supra,
 
 (1994) 21 Cal.App.4th at p. 1594, fn. 7.) The same reasoning applies with greater force here: Bach insurer owed primary coverage responsibilities springing from its own separate contractual undertakings, and it was never co-obligated under any contract. The legislative history surrounding the amendment to section 877.6 which added the “coobligor” language confirms that the amendment was intended to cover settlements in lawsuits where the contractual dispute involves “a joint contract” with “joint obligors” (see
 
 Pacific Estates, Inc.
 
 v.
 
 Superior Court
 
 (1993) 13 Cal.App.4th 1561, 1571-1572 [17 Cal.Rptr.2d 434]). Hartford and Landmark do not occupy that relationship. Moreover, even if we adopted the
 
 Diamond Heights
 
 view, the statute would
 
 still
 
 not apply here, because Hartford’s and Landmark’s insurance policies were issued before 1988. Contracts entered before 1988 are not within the reach of the statutory bar against contribution among co-obligors. (See § 877, subd. (d).)
 

 [5]
 

 Section 877 describes them as “tortfeasors claimed to be liable for the same tort,” while section 877.6, subdivision (a)(1) refers to them as “joint tortfeasors.” The terms convey the same meaning.