105 Cal.Rptr.2d 559 (2001)
88 Cal.App.4th 105
CENTENNIAL INSURANCE COMPANY, Plaintiff, Cross-defendant and Appellant,
v.
UNITED STATES FIRE INSURANCE COMPANY, Defendant, Cross-complainant and Respondent.
No. A090305.
Court of Appeal, First District, Division Three.
March 30, 2001.
*560 Burnham Brown, Gary R. Selvin, Oakland, and Keri L. Faseler, Sacramento, for Plaintiff, Cross-defendant and Appellant.
Branson, Brinkop, Griffith & Strong, Thomas A. Branson, Harry Griffith, Matthew S. Foy and John Campo, for Defendant, Cross-complainant and Respondent.
McGUINESS, P.J.
Centennial Insurance Company (Centennial) appeals from a judgment entered in favor of respondent United States Fire Insurance Company (U.S.Fire) using the "time on the risk" method to apportion the parties' respective defense costs accrued in defending their mutual insured. Centennial contends the trial court's choice of a method of allocation based on the carriers' respective time on the risk resulted in an inequitable allocation of defense costs; it asks this court to establish a "single bright line rule" mandating the equal apportionment of defense costs among multiple insurers in all cases. Centennial's arguments are unsupported by established law and its position is undermined by the facts of the case. We therefore affirm the judgment.

Factual and Procedural Background
The underlying facts are not in dispute. Lincoln Associates (Lincoln) was a joint venture responsible for developing, constructing and marketing a residential condominium project known as Pacific Plaza, located in San Leandro. U.S. Fire insured Lincoln under a general liability insurance policy for a period of approximately five and one-half months from January 19, 1982, through July 1, 1982.[1] Centennial insured Lincoln under a general liability insurance policy for a period of three years from February 1, 1985, through February 1, 1988. Lincoln was subsequently insured by Travelers Insurance Group, Inc. (Travelers) for the year from February 1, 1988, through February 1, 1989.
In November 1991, the Pacific Plaza Homeowners' Association filed an action against Lincoln and others in Alameda County Superior Court, alleging liability for construction defects and property damage to Pacific Plaza units. Centennial and Travelers assumed the defense of Lincoln under a reservation of rights. Believing that their reservation of rights created a possible conflict of interest, Centennial and Travelers permitted Lincoln to select independent counsel pursuant to Civil Code section 2860. After American Builders was joined in the homeowners' action by way of a cross-complaint, U.S. Fire was placed on notice of the claim against Lincoln. In March 1995, Lincoln's attorney tendered its defense to U.S. Fire. In December 1995, U.S. Fire accepted the tender of defense, under a reservation of rights. U.S. Fire retained its own attorney to defend Lincoln's interests.
In July 1996, the homeowners' action against Lincoln was settled for approximately $1 million. Centennial, Travelers and U.S. Fire each contributed to the settlement, with Centennial and Travelers paying a combined total of $875,000, and U.S. Fire paying $125,000.[2] In defending *561 Lincoln in the homeowners' suit, Centennial and Travelers paid approximately $611,000 in attorney fees and other costs toward the defense of Lincoln in the underlying homeowners' action. U.S. Fire reimbursed Centennial and Travelers in an amount of approximately $68,000 toward the amounts expended in Lincoln's defense.
A disagreement arose between the parties concerning whether U.S. Fire had contributed sufficiently toward the defense of Lincoln. Specifically, the parties disputed whether the insurers' respective shares of the defense costs should be apportioned using a time on the risk method, or instead on an equal basis with each insurer paying one-third of the costs. On March 17, 1998, pursuant to Traveler's assignment of rights, Centennial filed its complaint on behalf of both itself and Travelers against U.S. Fire, contending that defense costs should be allocated equally rather than on the basis of a time on the risk method of allocation; and alleging that U.S. Fire's contribution to defense costs was insufficient. U.S. Fire subsequently filed a cross-complaint for equitable subrogation, contribution and declaratory relief, arguing that defense costs were properly allocated on a time on the risk basis.
The parties filed cross-motions for summary adjudication, alleging that judgment should be granted in accordance with their respective positions. After oral argument on the cross-motions, the trial court denied Centennial's motion and granted that of U.S. Fire. The trial court entered a stipulated judgment apportioning Lincoln's defense costs on a time on the risk basis, and thereupon ruling that U.S. Fire was obligated to contribute one-ninth of the total defense costs incurred based on the actual time period U.S. Fire's policy covered Lincoln relative to the time period of the respective policies of Centennial and Travelers. This appeal timely followed.

Discussion
The sole issue on this appeal is whether the trial court erred in allocating defense costs among the several insurance carriers responsible for the defense of a mutual insured on the basis of the relative amount of time each insurer was "on the risk," rather than on an "equal shares" basis. Appellant Centennial contends the trial court was required both by appellate precedent and by considerations of equity to allocate the costs of defense equally among itself, Travelers and U.S. Fire, despite the undeniable fact the duration U.S. Fire's insurance coverage of Lincoln was a relatively small fraction of the overall period of coverage compared to that provided by Centennial and Travelers. We conclude that Centennial is wrong both on the law and as a matter of equity.
We start with the standard of review. Centennial asserts that because the question before this court is a pure question of law, the trial court's decision is subject to de novo review. It is of course true that, in general, appellate review of a trial court's decision to grant or deny a summary judgment motion is on the basis of a de novo examination of the evidence before the trial court and an independent determination of its effect as a matter of law. (Sangster v. Paetkau (1998) 68 Cal. App.4th 151, 161-163, 80 Cal.Rptr.2d 66.) This rule is applicable in the usual case, in which the questions presented upon the motion for summary judgment are matters of law not involving the exercise of judicial discretion. (Krieger v. Nick Alexander Imports, Inc. (1991) 234 Cal.App.3d 205, 212, fn. 3, 285 Cal.Rptr. 717; Barisich v. Lewis (1990) 226 Cal.App.3d 12, 15, fn. 1, 275 Cal.Rptr. 331.) However, in the limited and exceptional circumstances where a trial court is required to exercise its discretion in passing on a Code of Civil *562 Procedure section 437c motion for summary judgment, and grants or denies such a motion on the basis of its equitable determination of a question as to which the exercise of judicial discretion is proper, the standard of review on appeal necessarily is whether the trial court's decision amounted to an abuse of discretion. (Fireman's Fund Ins. Co. v. Maryland Casualty Co. (1998) 65 Cal.App.4th 1279, 1288, 1307-1309, 77 Cal.Rptr.2d 296 (Fireman's Fund); Krieger v. Nick Alexander Imports, Inc., supra, 234 Cal.App.3d at p. 212, fn. 3, 285 Cal.Rptr. 717; Danieley v. Goldmine Ski Associates, Inc. (1990) 218 Cal.App.3d 111, 127-129, 266 Cal.Rptr. 749; Overland Plumbing, Inc. v. Transamerica Ins. Co. (1981) 119 Cal.App.3d 476, 482-484, 174 Cal.Rptr. 1.)
This is such a case. In choosing the appropriate method of allocating defense costs among multiple liability insurance carriers, each insuring the same insured, a trial court must determine which method of allocation will most equitably distribute the obligation among the insurers "pro rata in proportion to their respective coverage of the risk," as "a matter of distributive justice and equity." (Fireman's Fund, supra, 65 Cal.App.4th at pp. 1293, 1308, 77 Cal.Rptr.2d 296.) As such, the trial court's determination of which method of allocation will produce the most equitable results is necessarily a matter of its equitable judicial discretion. (Signal Companies, Inc. v. Harbor Ins. Co. (1980) 27 Cal.3d 359, 369, 165 Cal.Rptr. 799, 612 P.2d 889 [relative obligations of multiple insurers to participate in defense costs is subject to "varying equitable considerations"]; Fireman's Fund supra, 65 Cal. App.4th at pp. 1293, 1308, 77 Cal.Rptr.2d 296 [trial court's allocation of defense costs "was well within the trial court's equitable discretion"]; Stonewall Ins. Co. v. City of Polos Verdes Estates (1996) 46 Cal.App.4th 1810, 1853-1854, fn. 14, 54 Cal.Rptr.2d 176 (Stonewall) ["the trial court has discretion to select a method" or formula to be used in apportioning defense liability among insurers "that will produce the most equitable results"]; Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co. (1996) 45 Cal.App.4th 1, 52-53, 52 Cal. Rptr.2d 690 (Armstrong) [trial court has discretion to determine proper method of allocating defense costs among multiple insurers "`in light of varying equitable considerations which may arise' in particular cases"]; CNA Casualty of California v. Seaboard Surety Co. (1986) 176 Cal.App.3d 598, 619-620, 222 Cal.Rptr. 276 [trial court employed "fair and reasonable" method of apportioning defense costs equitably among multiple insurers, and therefore "did not abuse its discretion" in the allocation it made].)
Thus, the issue on this appeal is whether the trial court abused its discretion in determining that the "time on the risk" method of allocating defense costs among multiple insurance carriers was the most equitable way of apportioning defense costs under the circumstances presented by this case, or whether it instead should be required to adopt an "equal shares" approach. (Stonewall, supra, 46 Cal.App.4th at pp. 1853-1854, fn. 14, 54 Cal.Rptr.2d 176.) Centennial urges that both established case law and "principles of equity" require that defense costs (as opposed to costs of indemnification) be apportioned equally among all insurers sharing the duty to defend. Centennial is wrong.
In keeping with the fundamental principle that a trial court has discretion to select a method of allocating costs among insurers with the aim of producing the most equitable results based on the facts and circumstances of the particular case, the courts have adopted a number of different ways of apportioning the burden among multiple insurers. These various methods have included, among others, the following: (1) apportionment based upon the relative duration of each primary policy as compared with the overall period of coverage during which the "occurrences" "occurred" (the "time on the risk" method) *563 (see Fireman's Fund, supra, 65 Cal. App.4th at pp. 1302-1308, 77 Cal.Rptr.2d 296;[3]Stonewall, supra, 46 Cal.App.4th 1810, 1861-1864, 54 Cal.Rptr.2d 176; Ins. Co. North America v. Forty-Eight Insulations (6th Cir.1980) 633 F.2d 1212, clarified 657 F.2d 814); (2) apportionment based upon the relative policy limits of each primary policy (the "policy limits" method) (see Argonaut Ins. Co. v. Transport Indem. Co. (1972) 6 Cal.3d 496, 507, 99 Cal. Rptr. 617, 492 P.2d 673; CNA Casualty of California v. Seaboard Surety Co., supra, 176 Cal.App.3d at pp. 619-620, 222 Cal. Rptr. 276); (3) apportionment based upon both the relative durations and the relative policy limits of each primary policy, through multiplying the policies' respective durations by the amount of their respective limits so that insurers issuing primary policies with higher limits would bear a greater share of the liability per year than those issuing primary policies with lower limits (the "combined policy limit time on the risk" method) (see Armstrong, supra, 45 Cal.App.4th at pp. 52-53, 52 Cal. Rptr.2d 690); (4) apportionment based upon the amount of premiums paid to each carrier (the "premiums paid" method) (Insurance Co. of Tex. v. Employers Liability Assur. Corp. (S.D.Cal.1958) 163 F.Supp. 143, 147-151); (5) apportionment among each carrier in equal shares up to the policy limits of the policy with the lowest limits, then among each carrier other than the one issuing the policy with the lowest limits in equal shares up to the policy limits of the policy with the next-to-lowest limits, and so on in the same fashion until the entire loss has been apportioned in full (the "maximum loss" method) (see Mission Ins. Co. v. Allendale Mut. Ins. Co. (1981) 95 Wash.2d 464, 465-468 [626 P.2d 505] ); and (6) apportionment among each carrier in equal shares (the "equal shares" method) (see Reliance Ins. Co. v. St. Paul Surplus Lines Ins. (4th Cir.1985) 753 F.2d 1288,1292).
Clearly, and in keeping with the refusal of the California Supreme Court to dictate a single definitive rule to be applied in all cases,[4] the courts in this state have employed a variety of different methods of apportionment with the goal of reaching *564 the most equitable result based on the given facts and circumstances of a particular case. In this case, the parties presented the trial court with two options. U.S. Fire argued for application of the time on the risk method of allocation, while Centennial urged that the trial court adopt the equal shares method. The parties continue to argue for the same two alternatives on appeal.
On the facts before us, we have no difficulty concluding that in this particular case, the time on the risk method was more equitable than the equal shares approach. U.S. Fire was responsible for insuring Lincoln for a period of less than six months between January 19, 1982, through July 1, 1982, only a small fraction of the total insurance coverage period of four and one-half years provided to Lincoln by Centennial, Travelers and U.S. Fire together. In order to adopt the equal shares method of allocation advanced by Centennial, the trial court would have been required simply to ignore the relative length of time each of the several insurers was actually responsible for insuring the acts of Lincoln and was receiving insurance premiums for bearing that risk. Had the trial court applied an equal shares allocation, U.S. Fire would have had exactly the same liability for defense costs as Centennial and Travelers, even though the latter two insurers had covered Lincoln for nearly 90 percent of the duration of the combined policy period and had also collected premiums for that longer period of coverage accordingly. Such a result would have been patently arbitrary and inequitable.
Centennial nevertheless contends the trial court should have applied the equal shares method of allocation because each of the insurers in this case owed their mutual insured (Lincoln) a "complete duty to defend" the entire claim, even if only a portion of the alleged damage occurred during a given insurer's policy period. Based on this analysis, Centennial urges that the most equitable method of apportioning defense costs is equally among the three carriers, i.e., one-third each.[5]
*565 Centennial's argument confuses the rules applicable to equitable contribution among insurers with those pertinent to the relationship between an insurance carrier and its own insured. (See generally, Fireman's Fund, supra, 65 Cal. App.4th at pp. 1292-1296, 1302-1309, 77 Cal.Rptr.2d 296.) An insurer's obligations to an insured are governed by the contract of insurance between the parties. In contrast, the reciprocal contribution rights and obligations of several insurers covering the same risk do not arise from and are not governed by contract; instead they "`flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.'" (Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d at p. 369, 165 Cal.Rptr. 799, 612 P.2d 889.) Although insurers must respond in full to a contractual policy holder's tender of defense, their respective obligations for contribution to other insurers for the costs of defense are entirely separate from their obligations to their insured and are adjusted equitably on the basis of all the circumstances of the case.
Contrary to Centennial's assertion on this appeal, there was no evidence U.S. Fire did anything to gain some sort of "profit" at the expense of the other insurers in this case. To the contrary, the record shows U.S. Fire satisfied the contractual obligations it owed its insured: its handling of the underlying claim was appropriate, and it ultimately contributed its fair share to the settlement of the underlying claim and funded almost $68,000 of the total attorney fees expended. In any event, regardless of the actions U.S. Fire took with respect to its insured, it was ultimately called upon to contribute its fair share to the total defense costs incurred on behalf of Lincoln. The sole question before the trial court was what method to employ for purposes of equitable contribution in allocating the defense costs among the three insurance carriers. On the record of this case, the time on the risk method chosen by the trial court was far more equitable than the rigid "equal shares" approach upon which Centennial insists. In view of the trial court's equitable discretion in making this determination, we may not reverse its decision in the absence of a strong showing of abuse. Centennial has made no such showing here.
There is no reason for adoption of the kind of "bright line" rule urged by Centennial, much less one requiring application of an "equal shares" approach in every case. As seen, the California courts have expressly and repeatedly refused to formulate a definitive, rigid rule establishing a single method of allocating defense costs in every case. (Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d at p. 369, 165 Cal.Rptr. 799, 612 P.2d 889; Fireman's Fund, supra, 65 Cal.App.4th at pp. 1293-1296, 1302-1308, 77 Cal.Rptr.2d 296; Stonewall, supra, 46 Cal.App.4th at pp. 1853, fn. 14, 1859-1864, 54 Cal.Rptr.2d 176; Armstrong, supra, 45 Cal.App.4th at pp. 52-55, 52 Cal.Rptr.2d 690; Fire Ins. Exchange v. American States Ins. Co., supra, 39 Cal.App.4th at pp. 661-662, 46 Cal. Rptr.2d 135; CNA Casualty of California v. Seaboard Surety Co., supra, 176 Cal. App.3d at p. 619, 222 Cal.Rptr. 276.) The reason for the courts' refusal to establish such a bright-line rule is the existence of differing factual circumstances varying from case to case, which unavoidably give rise to different equitable considerations that must be taken into account. Among other things, these considerations include the particular terms, exclusions and limits of the respective insurance policies in effect; the time each co-insurer is "on the risk"; the nature of the given claim; the relation of the insured to the several insurers; and the relative amount of premiums paid. In order to avoid the inequities that would inevitably result from application of a single rigid rule in all cases, the courts in California have consistently held that trial courts must maintain equitable discretion to fashion a method of allocation suited to the particular facts of each case and the interests of justice, subject to appellate *566 review for abuse of that discretion. A single bright-line rule to be applied in every instance would be the very antithesis of such an equitable approach.
We conclude the trial court did not abuse its discretion in selecting the "time on the risk" method of allocating defense costs among the three insurers in this case.

Disposition
The judgment is affirmed. Appellant Centennial shall pay respondent U.S. Fire's costs on appeal.
PARRILLI, J., and WALKER, J., concur.
NOTES
[1] For purposes of clarity and simplicity, this opinion will refer to respondent U.S. Fire and its predecessors in interest collectively as U.S. Fire. U.S. Fire's involvement in this lawsuit arose pursuant to an endorsement to a policy of insurance issued by U.S. Fire to another entity, American Builders. That endorsement required U.S. Fire to insure all joint ventures in which American Builders had a financial interest. Pursuant to this endorsement, American Builders' preexisting insurance policy with U.S. Fire was extended to Lincoln when American Builders became a member of that joint venture.
[2] There appear to be some discrepancies between the record and the facts as stated in the parties' briefs with regard to the total amount of the settlement vis-à-vis Lincoln and the parties' respective payments thereto. The facts recited in this opinion are based on the settlement agreement itself and the confirming July 12, 1996, letter of Lincoln's attorney describing that settlement. In any case, the amount of the settlement and the parties' respective allocation of responsibility for the settlement proceeds are not at issue in this appeal.
[3] Centennial asserts the court in Fireman's Fund actually adopted the "equal shares" approach rather than the time on the risk method for allocating defense costs. This is a fundamental misreading of the decision. Fireman's Fund affirmed the trial court's discretion in fashioning an equitable method of allocating defense costs appropriate to the facts before it, upheld the trial court's use of the "time on the risk" method of allocation, and concluded that any small discrepancy between the trial court's allocation of costs and the relative percentage of time each carrier was actually on the risk "was truly de minimis." (Fireman's Fund, supra, 65 Cal. App.4th at pp. 1303, 1307-1308, 77 Cal. Rptr.2d 296.)

The crucial point affirmed by the Fireman's Fund court is that the determination of the proper method of allocating defense costs among coinsurers is a matter within the sound equitable discretion of the trial court, and is not subject to hard and fast "bright line" rules of the sort Centennial seeks to apply in this case. As seen, this basic principle has been repeatedly reaffirmed by the courts of this state. (Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d at p. 369, 165 Cal.Rptr. 799, 612 P.2d 889; Fire Ins. Exchange v. American States Ins. Co. (1995) 39 Cal.App.4th 653, 661-662, 46 Cal.Rptr.2d 135; CNA Casualty of California v. Seaboard Surety Co., supra, 176, Cal.App.3d at p. 619, 222 Cal.Rptr. 276.)
[4] "We expressly decline to formulate a definitive rule applicable in every case in light of varying equitable considerations which may arise, and which affect the insured and the primary and excess carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers. [Citation.] ... `The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other.. .. Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders.' [Citation.]" (Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d at p. 369, 165 Cal.Rptr. 799, 612 P.2d 889.)
[5] At oral argument, counsel for Centennial argued that its position favoring allocation of defense costs on an equal shares basis is supported by the California Supreme Court decision in Continental Cas. Co. v. Zurich Ins. Co. (1961) 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (Continental v. Zurich). Leaving aside the fact that Continental v. Zurich was not cited by either party in their respective appellate briefs, Centennial is wrong in its analysis of that case.

Unlike the situation before us, in which Centennial and U.S. Fire both provided coverage for the same insured (Lincoln) but at different periods of time over which the covered occurrences took place, the three insurance carriers in Continental v. Zurich each simultaneously covered one of three different insureds involved in the single occurrence at issue in the underlying personal injury lawsuit. The issue in Continental v. Zurich was whether and to what extent each insurance company was responsible for indemnification and defense costs arising from the underlying liability lawsuit filed against one of the three insureds. The Supreme Court upheld the trial court's determinations that all three liability insurance policies provided coverage to the lawsuit defendant as an "additional insured"; because one of the three carriers provided primary coverage, the other two carriers were liable on a pro rata basis only for the excess balance of the personal injury liability judgment over and above the amount of the primary carrier's coverage; and defense costs were properly shared by all three insurers "in the same ratio" that they shared in indemnifying the underlying judgment. (Id. at pp. 34-38, 17 Cal.Rptr. 12, 366 P.2d 455.)
Thus, the allocation of defense costs upheld by the Supreme Court in Continental v. Zurich was not in equal shares. Instead, defense costs in that case were apportioned among the three carriers in accordance with "the same ratio" used to determine their respective responsibilities for indemnification, i.e. by the ratio of the primary insurer's policy limits as compared to those of the two excess insurance carriers. Moreover, because the covered liability at issue in Continental v. Zurich was an accident that occurred at a single point in time at which all three policies were simultaneously in effect, there was no reason to consider applying the "time on the risk" method of allocation. In short, the terms "pro rata" and "equal shares" are not synonymous. Continental v. Zurich is completely distinguishable from the instant case on its facts, and of no assistance to Centennial.