[No. B204521. Second Dist., Div. Three. Mar. 10, 2010.]

SCOTTSDALE INSURANCE COMPANY, Plaintiff and Appellant, v. CENTURY SURETY COMPANY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 1 and 2 of the Discussion.

COUNSEL

Knopfler & Pazos, George Knopfler and James Pazos for Plaintiff and Appellant.

Woolls & Peer and H. Douglas Galt for Defendant and Appellant.

OPINION

**CROSKEY, Acting P. J.**—When multiple insurance companies have the duty to defend the same mutual insured against the same legal action, the

costs of the defense are to be allocated among the insurers equitably. When an insurance company which has the duty to defend declines to participate in the defense of the common insured, those insurers who contributed to the defense may pursue an action for equitable contribution against the nonparticipating insurer. In this case, Scottsdale Insurance Company (Scottsdale) brought suit against Century Surety Company (Century) seeking equitable contribution based on Century's failure to participate in the defense of 17 common insureds in hundreds of actions in which Scottsdale, along with at least one other insurer, shared the costs of the defense of those insured parties. Scottsdale also sought equitable contribution with respect to indemnity of the common insureds in those underlying actions in which Scottsdale (and at least one other insurer) had paid amounts to settle the actions.

Three principal defenses were raised. In the unpublished portion of the opinion we discuss two of them and conclude that the trial court correctly decided both. First, Century argued that it was not required to defend or indemnify three of the common insureds because Century's insurance policies did not provide coverage of the insureds for the actions alleged against them. Specifically, Century relied on a policy exclusion intended to exclude from coverage any action arising out of work which had been completed by the insured prior to the effective date of the policy (the prior work exclusion). The trial court concluded that Century's prior work exclusion was not conspicuous, plain, and clear, and refused to enforce it. Century was therefore required to share equitably in the costs of the defense and indemnification of the common insureds, despite the presence of this exclusion.

The second issue we discuss in the unpublished portion of the opinion is the one raised by Century's argument that the statute of limitations had run on Scottsdale's right to seek equitable contribution against it with respect to many of the underlying actions. Scottsdale attempted to rely on a tolling agreement which had been entered into between Scottsdale and Century with respect to a previous equitable contribution action Scottsdale had pursued against Century (the Orange County action). The trial court found that the tolling agreement applied *only* to the underlying actions at issue in the Orange County action and that it did not apply to any of the underlying actions at issue in the instant action. The court therefore concluded that the statute of limitations barred Scottsdale's right to recover with respect to many of the underlying actions.

Finally, we consider, in the published portion of the opinion, the important issues of damages and burden of proof in an action for equitable contribution by one insurer against another. The trial court concluded that Scottsdale was entitled to equitable contribution from Century with respect to approximately 80 of the underlying actions. The amount of money that Scottsdale had

contributed toward the defense and indemnity of the underlying insureds in those actions was not subject to dispute. With respect to many of the underlying actions, the parties also did not dispute (1) the total number of insurers who participated in the defense of the common insureds; and (2) that the defense costs were allocated among the participating insurers by means of an equal shares formula.[1] Century argued, in order to calculate the amount which it owed Scottsdale for defense costs, the trial court should recalculate, under the equal shares method, the amount each insurer would have paid for defense costs had Century participated with the other insurers in the defense of the insured. Thus, Century argued it should be ordered to pay Scottsdale the difference between the equal share Scottsdale paid without Century's participation, and the equal share it would have paid had Century participated.[2] The trial court rejected Century's proposed method of calculation, and instead awarded Scottsdale *half* of all defense and indemnity payments it made with respect to the claims for which it was entitled to recover equitable contribution. This result, however, was in conflict with the general rule, heretofore applied in noninsurance cases, that in order to be entitled to equitable contribution a party must have first paid more than its share of the loss and it bears the burden of proving such circumstance.

We apply those principles here and conclude that they should have equal application in insurance cases. As a result, we will hold that not only must Scottsdale prove that it had paid more than its "fair share" of the defense and indemnity costs for the common insureds but it also bears the burden of producing the evidence necessary to calculate such "fair share." Moreover, we also hold that one insurer cannot recover as equitable contribution from another insurer any amount that would result in the first insurer paying *less* than its "fair share" even if that means that the otherwise liable second insurer will have paid nothing. Because the trial court applied an incorrect standard, we will reverse and remand for a redetermination of Scottsdale's equitable contribution damages.[3]

---

[1] With respect to sharing the costs of indemnity, there was some evidence indicating that the settlement amounts were shared among a known number of participating insurers by means of a "time on risk" allocation. In other instances, however, the total amount of the settlement is known, as is the amount Scottsdale paid, but the record does not reflect the calculation which led to Scottsdale's paying its particular portion of the total settlement.

[2] Similarly, Century argued that Scottsdale's equitable contribution recovery for settlement payments made under a time on risk allocation should be calculated by the difference between the amount Scottsdale paid and the amount Scottsdale would have paid had Century been included in the time on risk allocation of the total costs of settlement.

[3] Century also argued that the trial court erred in its determination that Century's prior work exclusion was unenforceable. Scottsdale countered that the trial court erred in its interpretation of the tolling agreement. As already noted, in the unpublished portion of this opinion we conclude the trial court was correct with respect to the prior work exclusion and tolling agreement.

## *FACTUAL AND PROCEDURAL BACKGROUND*[4]

Scottsdale and Century had many insureds in common; most were construction subcontractors. When a lawsuit was filed against one of the mutual insureds, the claim would be tendered to all of the insured's insurers. Frequently, Century would decline to participate in the defense and indemnity of the insured, often relying on one of two endorsements to its policies. One such endorsement, the prior work exclusion, is relied upon in this appeal. The other, an endorsement which purported to render Century's coverage as excess to other insurance (the excess endorsement), is not.

While Century declined to participate in the defense and indemnity of the common insureds, Scottsdale and other insurers did so. They agreed to share the costs of defense equally,[5] and agreed to share the costs of settlement as well. There is no indication that any of the underlying cases is still pending.

Scottsdale alone brought suit against Century for equitable contribution. There is no evidence that any other insurer brought suit against Century for equitable contribution,[6] nor does it appear that any of the common insureds brought suit against Century for bad faith for its failure to provide them with a defense or indemnity with respect to the several underlying claims.

The instant action is not the first time Scottsdale pursued Century for equitable contribution. In 2000, Scottsdale brought the Orange County action against Century. The first amended complaint in that action sought equitable contribution with respect to 32 underlying actions—it alleged the same three causes of action (equitable contribution toward defense costs, equitable contribution toward indemnity costs, and declaratory relief) with respect to each underlying action.[7] In the Orange County action, Century relied on the excess endorsement. Century and Scottsdale agreed to litigate the validity of

---

[4] Only a general outline of the factual and procedural history is necessary at this point; additional facts will be set forth as relevant to the particular issues in the "Discussion" part of this opinion.

[5] While there is no real dispute in this action that an "equal shares" allocation of defense costs was often used and is a reasonable method of allocating defense costs, there is some suggestion in the record that the defense costs were not *always* shared strictly equally. For example, the data indicate that, in one case, four insurers (including Scottsdale) equally shared in the defense costs, while a total of seven insurers shared in the settlement costs. It was suggested that four insurers shared the cost of one attorney while the other three insurers may have provided separate counsel; the record is simply unclear.

[6] Century's counsel represented that Century has been pursued for equitable contribution by other insurers, but there is no evidence of this in the record.

[7] The complaint actually alleged 99 causes of action. On appeal, the parties agree that three of the causes of action are duplicative, and that the complaint actually involves 96 distinct causes of action arising out of 32 underlying actions.

the excess endorsement by means of a test case. They filed cross-motions for summary adjudication regarding the validity of the excess endorsement with respect to one of the underlying actions. Scottsdale prevailed. In order to enable Century to pursue its argument on appeal, Scottsdale dismissed the Orange County action without prejudice. A tolling agreement was executed, whereby it was agreed that Century would not assert a time bar if, after resolution of the appeal in the test case, Scottsdale refiled the Orange County action. The test case was never resolved on appeal; Century and Scottsdale settled the Orange County action while that appeal was pending.

On March 3, 2004, Scottsdale filed the instant action, seeking equitable contribution with respect to over 300 underlying actions involving 17 common insureds.[8] The complaint did not specify any particular measure of the damages sought; it simply alleged that Scottsdale had paid more than its equitable share and that Century should be required to pay "in an amount according to proof at trial, and in accordance with equitable principles."

By the time the case proceeded to a bench trial in 2006, the number of underlying claims had been reduced to 184. Century raised several defenses, such as the excess endorsement, the prior work exclusion, and the statute of limitations, which could apply to multiple underlying claims. As the trial proceeded, the trial court concluded that it would be efficient to proceed by means of phases, because a possible ruling in favor of Century on one of its defenses would dramatically reduce the number of underlying claims at issue and impact the amount of evidence that would be necessary for the calculation of damages. At the close of the evidence on the first phase, both parties rested. The trial court accepted posttrial briefs on several issues. It then issued a series of tentative statements of decision, heard argument, and followed with final statements of decision on each issue.[9] As already mentioned, the trial court concluded: the prior work exclusion did not apply; the tolling agreement did not apply; and Scottsdale could recover one-half of the amounts it paid on the approximately 80 underlying claims on which it could recover. Ultimately, judgment was entered in favor of Scottsdale for that amount, in addition to prejudgment interest and costs. Both parties filed timely notices of appeal.

## ISSUES ON APPEAL

In Century's appeal, Century argues that the trial court erred in concluding its prior work endorsement was unenforceable.[10] Century also argues the trial

---

[8] None of these underlying actions had been at issue in the Orange County action.

[9] Additional evidence was also submitted on an issue unrelated to this appeal.

[10] See footnote 3, *ante.*

court abused its discretion in its calculation of the amounts owed. In Scottsdale's cross-appeal, Scottsdale argues that the trial court erred in concluding the tolling agreement did not apply to any underlying action which was not the subject of the Orange County action.[11]

## DISCUSSION

1., 2.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3. *The Trial Court Erred in Its Calculation of Damages*

Having concluded that the trial court did not err in its determination of the underlying actions for which Scottsdale could recover equitable contribution, we now turn to the calculation of damages. While the parties present the issue as a legal one, it is largely complicated by issues relating to evidence.

#### a. *Law of Equitable Contribution*

"In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1293 [77 Cal.Rptr.2d 296].)

The right to equitable contribution "is predicated on the common-sense principle that where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should

---

[11] See footnote 3, *ante.*

[*]See footnote, *ante*, page 1023.

not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1295.)

■ "In choosing the appropriate method of allocating defense costs among multiple liability insurance carriers, each insuring the same insured, a trial court must determine which method of allocation will most equitably distribute the obligation among the insurers 'pro rata in proportion to their respective coverage of the risk,' as 'a matter of distributive justice and equity.' [Citation.] As such, the trial court's determination of which method of allocation will produce the most equitable results is necessarily a matter of its equitable judicial discretion. [Citations.]" (*Centennial Ins. Co. v. United States Fire Ins. Co.* (2001) 88 Cal.App.4th 105, 111 [105 Cal.Rptr.2d 559].)

■ "In keeping with the fundamental principle that a trial court has discretion to select a method of allocating costs among insurers with the aim of producing the most equitable results based on the facts and circumstances of the particular case, the courts have adopted a number of different ways of apportioning the burden among multiple insurers. These various methods have included, among others, the following: (1) apportionment based upon the relative duration of each primary policy as compared with the overall period of coverage during which the 'occurrences' 'occurred' (the 'time on the risk' method) [citations]; (2) apportionment based upon the relative policy limits of each primary policy (the 'policy limits' method) [citations]; (3) apportionment based upon *both* the relative durations and the relative policy limits of each primary policy, through multiplying the policies' respective durations by the amount of their respective limits so that insurers issuing primary policies with higher limits would bear a greater share of the liability per year than those issuing primary policies with lower limits (the 'combined policy limit time on the risk' method) [citation]; (4) apportionment based upon the amount of premiums paid to each carrier (the 'premiums paid' method) [citation]; (5) apportionment among each carrier in equal shares up to the policy limits of the policy with the lowest limits, then among each carrier other than the one issuing the policy with the lowest limits in equal shares up to the policy limits of the policy with the next-to-lowest limits, and so on in the same fashion until the entire loss has been apportioned in full (the 'maximum loss' method) [citation]; and (6) apportionment among each carrier in equal shares (the 'equal shares' method) [citation]." (*Centennial Ins. Co. v. United States Fire Ins. Co., supra,* 88 Cal.App.4th at pp. 112–113, fn. omitted.)

■ "The costs of defense must be apportioned on the basis of equitable considerations not found in the insurers' own contracts, since the insurance

companies who must share the burden do not have any agreements among themselves. The courts have expressly declined to formulate any definitive rules for allocating defense costs among carriers, because of the 'varying equitable considerations which may arise, and which affect the insured and the . . . carriers, and which depend upon the particular policies of insurance, the nature of the claim made, and the relation of the insured to the insurers.' " (*CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 619 [222 Cal.Rptr. 276].) Questions as to whether the nonparticipating insurer breached the duty of good faith and fair dealing toward its insured or otherwise acted tortiously are not at issue in an equitable contribution action. (*Id.* at p. 621.) Equitable contribution does not depend on fault; it is based on an equitable apportionment of contractual undertakings. (*Hartford Accident & Indemnity Co. v. Superior Court* (1994) 29 Cal.App.4th 435, 441 [34 Cal.Rptr.2d 520].) We review a trial court's choice of a method of allocation for an abuse of discretion. (*Centennial Ins. Co. v. United States Fire Ins. Co.*, *supra*, 88 Cal.App.4th at p. 111.)

### b. *Scottsdale's Evidence and Method of Allocation*

Scottsdale's evidence of damages consisted largely of evidence that Scottsdale paid defense and indemnity costs for the common insureds (in connection with the underlying actions), in amounts to which Century stipulated, and that Century did not pay any such costs.[25] Scottsdale argued that it should receive equitable contribution in the amount of half of the amounts it had paid, regardless of whether any other insurers shared in the defense or indemnity of any of the common insureds. In other words, Scottsdale argued that Century should reimburse it for half of the amounts Scottsdale paid, whether Scottsdale had paid 1 percent or 100 percent of the costs of defense or indemnity, or any amount in between.

We utilize the device of a hypothetical example to assist in explaining the problem. Suppose that, with respect to a particular underlying claim, Scottsdale equally shared the defense costs with three other insurers. In such a scenario, each insurer would have paid 25 percent of the total defense costs. Scottsdale sought to recover half of what it had paid in defense costs from Century. In other words, under Scottsdale's theory of relief, Century and Scottsdale should equally split the 25 percent paid by Scottsdale (12.5 percent each), while the other three insurers would still have paid 25 percent each.[26]

---

[25] Scottsdale concedes that Century paid some funds in connection with one of the underlying actions.

[26] We use defense costs in our hypotheticals rather than settlement amounts, as it appears that defense costs were frequently allocated by the equal shares method, while settlement amounts were allocated by time on risk. The time on risk analysis is similar, although the math is a bit more complex. In a time on risk allocation, if Scottsdale was on the risk for 40 percent

### c. *Century's Evidence and Method of Allocation*

Century combed through Scottsdale's files relating to the underlying actions, and determined, with respect to many of the actions, exactly *how many other insurers* were involved in the defense and indemnification of the mutual insureds. Century also inferred from the files the percentage of the total defense or indemnity costs paid by Scottsdale.[27]

Armed with this evidence, Century argued that the *total* costs of defense and indemnity could be recalculated, according to the methods Scottsdale and the other insurers had agreed to use, with Century in the mix. Taking the hypothetical described above, Century argued that if the evidence showed that Scottsdale equally shared the defense costs with three other insurers, in amounts of 25 percent each, then if Century was included in the equal shares allocation, each of the five insurers would be responsible for 20 percent of the total costs. As Scottsdale had paid 25 percent of the defense costs when it should only have paid 20 percent, Century argued that Scottsdale's damages would be the difference between the two, or 5 percent of the total defense costs.[28]

Scottsdale disputed Century's evidence, however. While Scottsdale accepted Century's data for the *number of insurers* involved in the defense or indemnity of a mutual insured, Scottsdale argued that Century's failure to present evidence that the other insurers had paid the amounts allocated to them was a failure of proof which undermined Century's entire argument. In short, Scottsdale argued, Scottsdale had met its burden of proof by establishing that it had paid amounts on the underlying claims while Century had not—and Century failed in proving that its own share should be less than half of what Scottsdale had paid. This case thus presents issues regarding the respective parties' burdens of proof in an equitable contribution action.

---

of the total time, while other insurers combined to cover the other 60 percent of the risk, Scottsdale would have paid 40 percent of the total settlement cost, and therefore sought half of that amount, or 20 percent of the total settlement cost, from Century, *regardless of how much time Century was actually on the risk.*

[27] In some cases the evidence was better than others. For example, some files included letters transmitting settlement details and allocating the settlement amount among the insurers, specifically based on their time on risk. Others include attorney bills which indicate that the bill represents, for example, "your 1/6 portion split." In others, there is simply a handwritten notation on a bill stating "Ok to pay . . . 1/2 share."

[28] Century could perform a similar calculation with respect to the indemnity allocation by adding its time on risk to the total time on risk and recalculating the percentage time on risk for Scottsdale.

### d. *Burden of Proof on Equitable Contribution*

Before discussing the applicable law, we begin with an observation. Neither Scottsdale nor Century took steps to involve the other insurers in this equitable contribution action. This appears to have been because both stood to benefit financially in their absence. Consider our hypothetical example of four insurers who shared defense costs equally (25 percent each). If all four insurers were parties to this equitable contribution action against Century, the result would be that Century would be required to pay *each of those four insurers* 5 percent of the total defense costs, resulting in each of the insurers (including Century) paying 20 percent of the costs. But, in the absence of the other insurers, Scottsdale pursued a theory of allocation which would reduce its share of the defense costs down to 12.5 percent. Similarly, in the absence of the other insurers, Century pursued a theory of allocation which would result in its share of the defense costs being only 5 percent. Thus, both Century and Scottsdale stood to gain if the other insurers were not present, and stood to lose if they were.

■ The parties have not identified, and independent research has not disclosed, any authority directly dealing with an equitable contribution case in which the amounts paid by all participating insurers were *not* before the court. However, in equitable contribution cases outside the realm of insurance, courts have stated that a person who has paid *no more than his or her just proportion* of a debt cannot obtain equitable contribution, even from a party who has paid nothing. (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 650, fn. 7 [190 Cal.Rptr. 355, 660 P.2d 813]; *Jackson v. Lacy* (1940) 37 Cal.App.2d 551, 560 [100 P.2d 313].)

■ Scottsdale would have us disregard this authority on the basis of general language stating that "[i]n the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss *or defended the action without any participation by the others*." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1293, italics added.) Scottsdale relies on this language to argue that, as it defended the underlying action while Century did not, it has satisfied its burden of proving that it is entitled to equitable contribution. We disagree. In fact, the quoted language can be fully reconciled with the above quoted authority that a party cannot obtain equitable contribution unless that party has paid more than its fair share. *Fireman's Fund* did not state that an insurer could recover for equitable contribution if it participated in the defense of an action while another insurer did not; instead, it stated that "one insurer" could recover if it defended the action without *any* participation from *the other* insurers with a duty to defend. Clearly, a single insurer who bears the *entire defense burden*

has paid more than its fair share of the defense costs. Thus, we see no conflict in the law, and conclude that the general rules governing equitable contribution apply in the insurance context. An insurer can recover equitable contribution only when that insurer has paid more than its fair share; if it has not paid more than its fair share, it cannot recover, even against an insurer who has paid nothing.

### e. *Application of the Law to the Facts of This Case*

Scottsdale argues that it has established that it has paid more than its fair share. Indeed, the trial court concluded that Century had conceded—in light of the trial court's ruling on coverage issues—that Scottsdale paid more than its fair share on the claims as a whole. We agree with the trial court's analysis to a limited extent. Century agreed that Scottsdale had paid more than its fair share—but this agreement was based on Century's inferences from the evidence in Scottsdale's files regarding the allocation agreements and the percentage of total costs which Scottsdale had paid. If Century's evidence were wholly disregarded, there was *no* evidence that Scottsdale had paid more than its fair share. It cannot be disputed that Scottsdale paid more than Century did. But, unless Scottsdale also established that *some of the amount it paid was allocable to Century's fair share*, it did not meet its burden of proof.[29]

The question then arises if *Century's* evidence regarding the amounts paid by the other insurers is sufficient to meet *Scottsdale's* burden of proof. We believe that it could be, at least with respect to some of the underlying actions. Century and Scottsdale stipulated to the number of insurers participating in the defense or settlement of many of the underlying actions. Scottsdale's share of the total costs was often undisputed, and the method of allocation was also clearly demonstrated by the record. Thus, with respect to some of the underlying claims, the trial court could conclude that the evidence established that Scottsdale has paid more than its fair share.[30]

---

[29] Suppose that Scottsdale had *refused to pay any costs which it believed Century should have paid*. In that case, the other insurers would have stepped in to cover the gap in defense and indemnity costs to avoid a bad faith action, and Scottsdale would not have paid a penny more than its fair share. Thus, evidence that establishes no more than that Scottsdale had paid and Century had not is insufficient to prove that Scottsdale had paid more than its fair share. Scottsdale needs to also show the amount of its fair share in order to meet its burden of proof.

[30] Scottsdale argues that there is no evidence that the other insurers paid the shares which were allocable to them. We question the need for such evidence. That Scottsdale, for example, paid 25 percent of total defense costs under an equal shares allocation agreement with three other insurers *demonstrates* that Scottsdale paid more than the 20 percent fair share it would have paid had Century been included—regardless of the amounts the other insurers paid. In any event, to the extent such evidence was required, we believe the trial court could have inferred that, in the absence of any evidence that the attorneys or claimants sought additional

The next question is whether the trial court's method of allocation, in which Century was charged with half of the amounts Scottsdale had paid, was within the court's discretion. We conclude that it was not. In the usual case in which the trial court is asked to choose a method of allocation, the insurers on the risk have not already agreed among themselves on the method of allocation. In this case, however, Scottsdale and the other insurers *did* agree; they generally selected equal shares for defense costs and time on risk for indemnification costs. These methods of allocation are patently reasonable, and Scottsdale should be bound by its choices. Scottsdale has presented no authority for the proposition that it can agree to one method of allocation with every other insurer on the risk, but obtain a different method of allocation of *its allocated share*, when seeking equitable contribution from a nonparticipating insurer.

We return to our hypothetical of four insurers initially on a risk. Under the method of allocation advocated by Scottsdale and adopted by the trial court, the ultimate allocation of defense costs is as follows: Each of three other insurers—25 percent each; Scottsdale and Century—12.5 percent each. This is true even though the "fair share" each insurer should pay is 20 percent. The other three insurers could now pursue Century *and Scottsdale* for equitable contribution, because the other three have paid more than their fair shares while Century and Scottsdale have *each paid less*.[31] The trial court does not do equity with a method of allocation that provides the other insurers with an equitable contribution action against Scottsdale.[32]

Putting it another way, Scottsdale can only recover based on evidence that it paid more than its fair share *under the allocation agreements* it made with the other insurers. It cannot recover an amount from Century that would result in its paying less than its fair share under those same agreements.

funds or complained to Scottsdale, the other insurers paid as they had agreed. (Cf. Civ. Code, § 3529 ["That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due."].)

[31] Scottsdale suggests that none of the other insurers can pursue Century for equitable contribution, as the statute of limitations will bar their claims. We do not believe the equity of the trial court's choice of an allocation method depends on whether the other insurers are time-barred from bringing their own actions. Scottsdale should not receive a windfall from Century simply because the other insurers chose not to timely pursue their own actions.

[32] The inequity of the trial court's distribution is even more apparent in the indemnity scenario. If Scottsdale was on the risk for 50 percent of the time, the "half of Scottsdale's payments" allocation would require Century to pay 25 percent of the total settlement amount, even if Century had been on the risk for only 5 percent or 10 percent of the time. The trial court's method of allocation of settlement amounts charges Century with *more than its fair share* in any underlying action in which Scottsdale was on the risk for more than twice as long as Century.

Scottsdale argues that the trial court's method of charging Century with half of the total amounts paid by Scottsdale was within the trial court's discretion. In particular, Scottsdale relies on a finding of the trial court that Century's claims handling processes were "less than impressive, and had the effect of discouraging other insurers from pursuing their equitable contribution rights." The trial court indicated that it selected its method of allocation as follows: "The fact that it is difficult now to gather accurate and competent information about other potential carriers, and what should have been their contribution, is a product of Century's above-described strategy. The court agrees that in determining equitable allocation, this court cannot take into account punishment; this is not a bad faith case. However, equitable and legal principles support the conclusion that where someone's wrong has made it difficult to provide exact numbers as to loss or damage, plaintiff does not bear the burden of exactitude."

We do not question the trial court's findings, but its conclusion does not follow. If Scottsdale's records were so inadequate that they could not demonstrate that Scottsdale paid more than its fair share, Scottsdale did not meet its burden of proof and could not recover equitable contribution *at all*. If, on the other hand, Scottsdale's records establish that Scottsdale paid more than its fair share under the allocation methods it had voluntarily adopted with the other participating insurers, the trial court had no discretion to award Scottsdale damages under any other method of allocation. Century's lack of participation in the defense does not excuse Scottsdale's inadequate recordkeeping or discovery.[33]

### f. *Unusual Factual Circumstances Compel Reversal*

■ As we have explained, Scottsdale failed to meet its burden of proof of establishing that it paid more than its fair share of defense and settlement costs. Century, however, presented evidence which it believed established that Scottsdale had paid more than its fair share, and the trial court could have accepted that evidence, even though Scottsdale challenged its sufficiency.

In other words, if the trial court accepts Century's evidence, it could conclude that Scottsdale is entitled to equitable contribution according to the allocation methods agreed to by Scottsdale and the other participating insurers. Indeed, Century offered to stipulate that certain allocation methods (and percentages) were used in many of the underlying actions—from which the amount of Scottsdale's excess payments attributable to Century's failure to participate can be easily calculated.

---

[33] We again note that, under Scottsdale's theory of the case, it could recover substantially *more* if evidence regarding the total payment amounts was not before the trial court than it could if such evidence was present. Scottsdale thus had an incentive to not obtain that evidence through discovery.

It is therefore necessary for the matter to be remanded back to the trial court to recalculate damages under the allocation methods agreed to by Scottsdale and the participating insurers, to the extent such damages are supported by the evidence.

## *DISPOSITION*

The judgment is reversed and the matter remanded to the trial court for a redetermination of the amount of damages to be awarded Scottsdale, if any, in accordance with the views expressed in this opinion. The parties are to bear their own costs on appeal.

Kitching, J., and Aldrich, J., concurred.